895 A.2d 1143

ANTHONY OLIVO, EXECUTOR OF THE ESTATE OF ELEANOR OLIVO, DECEASED, AND IN HIS OWN RIGHT, PLAINTIFF–RESPONDENT, v. OWENS–ILLINOIS, INC; OWENS–CORNING CORP.; GAF CORPORATION; GARLOCK, INC.; FIBREBOARD CORP.; ARMSTRONG WORLD INDUSTRIES, INC.; TURNER–NEWALL, LTD.; MONSANTO; UNITED STATES GYPSUM CO.; ASBESTOS CLAIMS MANAGEMENT CORP. (F/K/A NATIONAL GYPSUM CO.); FOSTER WHEELER CORP.; FLINTKOTE CO.; FLEXITALLIC, INC.; A.P. GREEN INDUSTRIES, INC.; BRAND INSULATION CO.; ACANDS, INC.; MELRATH GASK-

ET, INC.; JAM INDUSTRIES, INC.; DURAMETALLIC, INC.; W.R. GRACE CO.; RAPID AMERICAN CORP.; CROWN, CORK & SEAL, ITSELF AND AS SUCCESSOR TO MUNDET CORK; RAYTHEON ENGINEERS (FORMERLY UNITED ENGINEERS); U.S. MINERAL PRODUCTS CO.; U.S. RUBBER CO.; E.I. DUPONT DE NEMOURS AND COMPANY, INC.; TEXACO, INC.; B.F. GOODRICH; SHELL CHEMICAL CORP. AND JOHN DOE CORPORATIONS (1–20), DEFENDANTS, AND EXXON MOBIL CORPORATION, DEFENDANT–APPELLANT.

Argued January 18, 2006—Decided April 24, 2006.

*Matthew M. Shors*, a member of the District of Columbia bar, argued the cause for appellant (*Sedgwick, Detert, Moran & Arnold*, attorneys; *Michael A. Tanenbaum*, of counsel; *Mr. Tanenbaum* and *Eric R. Fish*, on the briefs).

*Joshua M. Spielberg* argued the cause for respondent (*Shivers, Spielberg, Gosnay & Greatrex*, attorneys).

*David G. Evans* submitted a brief on behalf of amicus curiae Pacific Legal Foundation.

*Gary S. Kull* submitted a brief on behalf of amici curiae Coalition for Litigation Justice, Inc., National Federation of Independent Business Legal Foundation, American Chemistry Council, Property Casualty Insurers Association of America, American Tort Reform Association, Chamber of Commerce of the United States of America, and National Association of Manufacturers.

*Franklin P. Solomon* submitted a brief on behalf of amicus curiae Association of Trial Lawyers of America–New Jersey (*Weitz & Luxenberg*, attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

The issue before us is whether a landowner can be liable for injuries allegedly caused from asbestos exposure experienced by

the wife of a worker who had performed welding and steam fitting tasks that brought him into contact with asbestos on the landowner's premises. Plaintiff Anthony Olivo brought this wrongful death and survival action alleging that his deceased wife, Eleanor, was injured from inhaling asbestos that entered the household on his soiled work clothes, which she laundered. The defendant landowner, Exxon Mobil, filed a motion for summary judgment contending that it did not owe a duty of care to plaintiff's wife who had never set foot on defendant's premises. The trial court granted defendant's motion and dismissed the action. On appeal, however, the Appellate Division reversed. *Olivo v. Exxon Mobil Corp.*, 377 *N.J.Super.* 286, 872 *A.*2d 814 (App.Div.2005). We granted Exxon Mobil's petition for certification, 185 *N.J.* 39, 878 *A.*2d 855 (2005), and now affirm the judgment of the Appellate Division and remand for further proceedings consistent with this opinion.

## I.

Anthony Olivo worked as a steamfitter/welder from 1947 until he retired in 1984. He was hired out of Union Local 322 by several independent contractors to work at various industrial and commercial sites in New Jersey. One such site was Exxon Mobil's refinery in Paulsboro, New Jersey. During the course of his nearly forty-year career as a pipe welder, Anthony worked around asbestos-containing materials, including pipe covering and gaskets. Throughout his career, Anthony Olivo was married to Eleanor Olivo. As part of their daily routine when Anthony came home from work each night he would go to the basement where the family's washing machine was located, remove his work clothes, and change into clean clothing that Eleanor would leave there for him. Eleanor laundered Anthony's work clothes during the evening of every workday.

In 1989, Anthony was diagnosed with non-malignant asbestos-related disease. Eleanor was diagnosed with mesothelioma in 2000, and died shortly thereafter in 2001. Anthony filed a wrong-

ful death action on behalf of his deceased wife, and a survival action on his own behalf. The suit named thirty-two defendants including manufacturers and suppliers of asbestos products, as well as companies such as Exxon Mobil that owned the premises where the asbestos products were used and where Anthony worked as a laborer. The complaint alleged that Eleanor contracted mesothelioma as a result of her continuous exposure to asbestos dust that was introduced into the home on Anthony's work clothes—the work clothes she routinely laundered. The complaint asserted that the premises owners, including Exxon Mobil, breached their duty to maintain a safe working environment by failing to take appropriate measures to protect Anthony, and derivatively Eleanor, from exposure to asbestos, asbestos fibers, and asbestos dust.

All defendants except Exxon Mobil settled. Exxon Mobil filed its aforementioned motion for summary judgment, in which it argued that it owed no duty to Eleanor for injuries which had occurred off premises. The trial court granted the motion, finding that "imposing an additional duty on a landowner for asbestos related injuries that occurred off of the premises would not be fair or just."

In reversing that judgment, the Appellate Division stated that foreseeability of the harm was key to determining whether a duty existed and that, in this case, the risk of harm to someone like Eleanor from exposure to asbestos was foreseeable to Exxon Mobil. *Olivo, supra,* 377 *N.J.Super.* at 294–95, 872 *A.*2d 814. Although the risk of injury to Eleanor was foreseeable, the Appellate Division nevertheless considered whether it was unfair to impose a duty of care on Exxon Mobil for her injuries. *Id.* at 295–96, 872 *A.*2d 814. The panel concluded that Exxon Mobil was "in the best position to prevent the harm," *id.* at 296, 872 *A.*2d 814, and could easily have warned workers such as Anthony of the risks of asbestos exposure to his health, and the health of his wife. Moreover, Exxon Mobil could have taken measures such as providing changing rooms to reduce the risk of asbestos exposure.

*Ibid.* Finally, the panel acknowledged that although its decision arguably could expose Exxon Mobil to liability to any person harmed by coming into contact with Anthony and his work clothes, its holding was limited to a duty owed to plaintiff's decedent-wife. *Id.* at 297, 872 *A.*2d 814.

## II.

### A.

Courts traditionally have been reposed with responsibility for determining the scope of tort liability. *Kelly v. Gwinnell,* 96 *N.J.* 538, 552, 476 *A.*2d 1219 (1984). The imposition of a duty to exercise care to avoid a risk of harm to another involves considerations of fairness and public policy implicating many factors. *See Carvalho v. Toll Bros. & Developers,* 143 *N.J.* 565, 572, 675 *A.*2d 209 (1996) (citing *Dunphy v. Gregor,* 136 *N.J.* 99, 110, 642 *A.*2d 372 (1994)). The inquiry has been summarized succinctly as one that "turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993) (citing *Goldberg v. Hous. Auth.,* 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962)).

The desire to maintain fairness and justness in our tort jurisprudence led to the recognition in *Hopkins, supra,* that premises liability should no longer be limited by strict adherence to the traditional and rigid common law classifications based on the status of the person entering the premises. 132 *N.J.* at 435–38, 625 *A.*2d 1110. As this Court explained when it held that a real estate broker had a duty of care in respect of a dangerous condition of property displayed to prospective buyers through an open house,

[h]istorically, the duty of the owner or occupier to such a person is gauged by the right of that person to be on the land. That status is determined by which of three classifications applies to the entrant, namely, that of a business invitee, licensee, or trespasser.

\* \* \*

Resort to the common law methodology with its insistence on traditional classifications ... does not necessarily provide reliable guidance in determining the existence and scope of [a] duty of care....

\* \* \*

The inquiry should be not what common law classification or amalgam of classifications most closely characterizes the relationship of the parties, but ... whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition ... of a general duty to exercise reasonable care in preventing foreseeable harm ... is fair and just.
[*Id.* at 433, 438, 625 *A.*2d 1110.]

Our holding in *Hopkins* introduced flexibility into premises liability and, since, the traditional common law classifications have been applied with pliancy "to avoid foreseeable harm to others." *Brett v. Great Am. Recreation, Inc.,* 144 *N.J.* 479, 508, 677 *A.*2d 705 (1996). Thus premises liability law can, and should, develop in a manner consistent with its "fundamental purpose ... to deter conduct that creates an unreasonable risk of injury to others." *Kuzmicz v. Ivy Hill Park Apartments, Inc.,* 147 *N.J.* 510, 534–35, 688 *A.*2d 1018 (1997) (Stein, J., dissenting) (citing *Hopkins, supra,* 132 *N.J.* at 448, 625 *A.*2d 1110; *People Express Airlines, Inc. v. Consol. Rail Corp.,* 100 *N.J.* 246, 255, 495 *A.*2d 107 (1985)).

Foreseeability is significant in the assessment of a duty of care to another; moreover, it has a dual role in the analysis of tort responsibility. Generally, our jurisprudence recognizes "foreseeability as a determinant of a [defendant's] duty of care ... [as well] as a determinant of whether a breach of duty is a proximate cause of an ultimate injury." *Clohesy v. Food Circus Supermarkets, Inc.,* 149 *N.J.* 496, 502–03, 694 *A.*2d 1017 (1997); *see also Hill v. Yaskin,* 75 *N.J.* 139, 144, 380 *A.*2d 1107 (1977) (explaining that "[t]he probability of injury by one to the legally protected interest of another is the basis for the law's creation of a duty to avoid such injury, and foresight of harm lies at the foundation of the duty to use care and therefore of negligence."). Because the focus here is on the determination of a duty, foreseeability of harm weighs in that analysis as " 'a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate.' " *Carvalho, supra,* 143 *N.J.* at 572, 675 *A.*2d 209 (quoting

*Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.,* 135 *N.J.* 182, 194, 638 *A.*2d 1288 (1994)); *see also Alloway v. Bradlees, Inc.,* 157 *N.J.* 221, 723 *A.*2d 960 (1999); *Clohesy, supra,* 149 *N.J.* at 502, 694 *A.*2d 1017; *Snyder v. Am. Ass'n of Blood Banks,* 144 *N.J.* 269, 676 *A.*2d 1036 (1996). Once the ability to foresee harm to a particular individual has been established, however, considerations of fairness and policy govern whether the imposition of a duty is warranted. *Carter Lincoln–Mercury, supra,* 135 *N.J.* at 194–95, 638 *A.*2d 1288.

Thus in respect of a landowner's liability, whether a duty of care can be owed to one who is injured from a dangerous condition on the premises, to which the victim is exposed off-premises, devolves to a question of foreseeability of the risk of harm to that individual or identifiable class of individuals. *See Smith v. Fireworks by Girone, Inc.,* 180 *N.J.* 199, 210–13, 850 *A.*2d 456 (2004) (recognizing cause of action against public entity for foreseeable harm to child notwithstanding that harm occurred off dangerous public property); *see also People Express, supra,* 100 *N.J.* at 263–64, 495 *A.*2d 107 (expanding identifiable class of plaintiffs entitled to sue for economic damages, aside from physical injury, based on particularized foreseeability of their likelihood to be harmed). Foreseeability in the context of a duty analysis must assess " 'the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty. . . .' " *Clohesy, supra,* 149 *N.J.* at 503, 694 *A.*2d 1017 (quoting *Hill v. Yaskin,* 75 *N.J.* 139, 144, 380 *A.*2d 1107 (1977)). "Once the foreseeability of an injured party is established," *Carvalho, supra,* 143 *N.J.* at 573, 675 *A.*2d 209 (citations omitted), the determination of whether imposing a duty is fair involves " 'weighing, and balancing several factors— the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest

in the proposed solution.' " *Ibid.* (quoting *Hopkins, supra,* 132 *N.J.* at 439, 625 *A.*2d 1110).

### B.

Applying those general principles of tort liability to the facts of this case, the risk of injury to someone like Eleanor Olivo is one that should have been foreseeable to Exxon Mobil. Exxon Mobil was aware by 1937 that exposure, of sufficient duration and intensity, to asbestos dust or raw asbestos was associated with asbestosis. Moreover, a report prepared in 1937 specifically for the petroleum industry, detailed the hazards associated with "occupational dust," including asbestos particles, which was prevalent at petroleum plants. As early as 1916, industrial hygiene texts recommended that plant owners should provide workers with the opportunity to change in and out of work clothes to avoid bringing contaminants home on their clothes.

The record on summary judgment does not contain any evidence that Exxon Mobil provided those precautions to laborers such as Anthony who worked with the asbestos-laden materials at its Paulsboro plant and who then wore their contaminated clothing when they returned home. It requires no leap of imagination to presume that during the decades of the 1940's, 50's, 60's, and early 1980's when Anthony worked as a welder and steamfitter either he or his spouse would be handling his clothes in the normal and expected process of laundering them so that the garments could be worn to work again. Anthony's soiled work clothing had to be laundered and Exxon Mobil, as one of the sites at which he worked, should have foreseen that whoever performed that task would come into contact with the asbestos that infiltrated his clothing while he performed his contracted tasks.

■ We hold that to the extent Exxon Mobil owed a duty to workers on its premises for the foreseeable risk of exposure to friable asbestos and asbestos dust, similarly, Exxon Mobil owed a duty to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne

home on contaminated clothing. We agree with the Appellate Division's assessment of the fairness and justness of imposing on Exxon Mobil such a duty to plaintiff's wife.[1]

In weighing and balancing the relationship of the parties, the nature of the risk and how relatively easy it would have been to provide warnings to workers such as Anthony about the handling of his clothing or to provide protective garments, we do not hesitate to impose a derivative duty on Exxon Mobil for injury to plaintiff's spouse caused by exposure to the asbestos he brought home on his work clothing. Although Exxon Mobil fears limitless exposure to liability based on a theory of foreseeability built on contact with Anthony's asbestos-contaminated clothing, such fears are overstated. The duty we recognize in these circumstances is focused on the particularized foreseeability of harm to plaintiff's wife, who ordinarily would perform typical household chores that would include laundering the work clothes worn by her husband. Accordingly, public policy concerns about the fairness and proportionality of the duty recognized today should dissipate.

### III.

In its petition for certification to this Court, Exxon Mobil drew the battleline in two places in respect of its obligation to plaintiff. In addition to arguing that it did not owe a duty to Eleanor

---

[1] We note that the Appellate Division relied in its decision on the holding of the intermediate appellate court of New York that found a duty to exist in respect of a spouse exposed to asbestos brought home on her husband's work clothes. *Olivo, supra,* 377 *N.J.Super.* at 293–94, 872 A.2d 814. However, more recently the New York Court of Appeals reversed that determination and held that the employer, the Port Authority of New York and New Jersey, owed no duty to the employee's wife. *See Holdampf v. A.C. & S., Inc. (In re N.Y.C. Asbestos Litig.),* 5 *N.Y.*3d 486, 806 *N.Y.S.*2d 146, 840 *N.E.*2d 115 (2005). We add, however, as the Court of Appeals noted, that New York law differs from New Jersey's in that New York does not consider foreseeability when determining whether a duty exists. *Id.* at 146, 840 N.E.2d at 119, 122; *see also CSX Transp., Inc. v. Williams,* 278 *Ga.* 888, 608 *S.E.*2d 208 (2005) (holding similarly that employer owes no duty to non-employee family member who came into contact with employee's asbestos covered work clothes).

because she had not been on its premises herself, Exxon Mobil also argued that it could not owe a duty to Eleanor because it owed no duty in respect of asbestos exposure to Anthony, who was an employee of an independent contractor hired to perform work that required the contractor to address the incidental hazard of asbestos contact. Exxon Mobil contended before this Court that the Appellate Division may have believed Anthony to be an employee of Exxon Mobil and, therefore, that he was owed a higher duty of care than that to which he was entitled as an employee of an independent contractor.

## A.

An occupier of land owes a duty to his invitee "to use reasonable care to make the premises safe. . . ." *Handleman v. Cox*, 39 *N.J.* 95, 111, 187 *A.*2d 708 (1963). "[W]here the occupier of land[ ] engages an independent contractor to do work upon his premises, an employee of the contractor, while executing the work, . . . is an invitee. . . ." *Gudnestad v. Seaboard Coal Dock Co.*, 15 *N.J.* 210, 219, 104 *A.*2d 313 (1954) (citations omitted). Recently, a landowner's duty to an employee of an independent contractor was described as "a duty to provide a reasonably safe work place." *Muhammad v. N.J. Transit*, 176 *N.J.* 185, 199, 821 *A.*2d 1148 (2003) (quoting *Wolczak v. Nat'l Elec. Prod. Corp.*, 66 *N.J.Super.* 64, 75, 168 *A.*2d 412 (App.Div.1961)). That duty includes the obligation of making a reasonable inspection to discover dangerous conditions. *Handleman, supra,* 39 *N.J.* at 111, 187 *A.*2d 708; *see also Muhammad, supra,* 176 *N.J.* at 198, 821 *A.*2d 1148. Such duty has been held to have been satisfied by warning the independent contractor of the dangerous condition. *Muhammad, supra,* 176 *N.J.* at 198–200, 821 *A.*2d 1148 (finding that defendant landowner satisfied its duty to protect against dangerous condition on its property by warning contractor; no breach of duty because landowner failed to warn individual employee directly).

Significantly, the law carves out an exception to the requirement that premises be made safe for an independent

contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself. As stated in *Muhammad, supra,* " 'the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform.' " *Id.* at 199, 821 *A.*2d 1148 (quoting *Wolczak, supra,* 66 *N.J.Super.* at 75, 168 *A.*2d 412). A landowner " 'is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work.' " *Id.* at 198, 821 *A.*2d 1148 (quoting *Gibilterra v. Rosemawr Homes,* 19 *N.J.* 166, 170, 115 *A.*2d 553 (1955)). This exception to the landowner's general duty exists because "[t]he landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly." *Id.* at 199, 821 *A.*2d 1148 (quoting *Wolczak, supra,* 66 *N.J.Super.* at 75, 168 *A.*2d 412). The exception only applies, however, when "the landowner does not retain control over the means and methods of the execution of the project." *Id.* at 198, 821 *A.*2d 1148.

## B.

Consideration of the above principles leads to the conclusion that there are genuine issues of material fact about the extent of the duty that Exxon Mobil owed to Anthony, and whether Exxon Mobil satisfied that duty. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995) (explaining that genuine issue of material fact requires "consider[ation] whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.") Issues of fact remain as to whether asbestos exposure was a known risk incidental to the specific work Anthony was hired to perform at the Exxon Mobil site. Questions

persist concerning the scope of the work Anthony was hired to perform, the scope of work that he actually performed, particularly with respect to the handling of asbestos containing products, and the extent of Exxon Mobil's supervision and control over the work. Exxon Mobil contends that Anthony's work was controlled by his employers, but that contention is contradicted in part by Anthony's testimony that Exxon Mobil gave safety instructions and at times provided respiratory protection to the independent contractor's workers as well as its own employees. Finally, even if we could find on this record that asbestos exposure was not a hazard incident to the work that Anthony's employer was contracted to perform and for which Anthony was employed, and that therefore Exxon Mobil owed a duty to Anthony, the question remains whether Exxon Mobil satisfactorily discharged that duty through the information it provided to its contractors. The record is unclear as to what Exxon Mobil told its contractors about the presence of asbestos at its oil refinery.

Accordingly, a remand of this case is necessary to allow for the establishment of a record to determine whether the hazard-incident-to-the-work exception applies in respect of a duty of care owed by Exxon Mobil to Anthony. We agree with Exxon Mobil that if that exception applies, then no duty is owed to Anthony and no derivative duty can be imposed on Exxon Mobil for Eleanor in respect of the exposure she experienced from asbestos borne home on Anthony's work clothing.

## IV.

The judgment of the Appellate Division is affirmed and the matter is remanded for further proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, WALLACE and RIVERA-SOTO—5.

*Opposed*—None.