955 A.2d 317 (2008)
402 N.J. Super. 486
Robin CERDEIRA, Plaintiff-Appellant,
v.
MARTINDALE-HUBBELL, a division of Reed Elsevier, Inc.,[1] and Melvin Bowers,[2] Defendants-Respondents.
No. A-5855-06T1.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 2008.
Decided September 18, 2008.
*318 Michael D. Mezzacca argued the cause for appellant (Hartlaub, Dotten, Mezzacca & Ko, attorneys; Mr. Mezzacca, of counsel and on the briefs).
Robert H. Bernstein, Summit, (Thompson Coburn) argued the cause for respondent Martindale-Hubbell, a division of Reed Elsevier, Inc.
Before Judges LISA, SAPP-PETERSON and NEWMAN.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
Plaintiff Robin Cerdeira appeals from the grant of summary judgment dismissing her sexual harassment complaint in which she urged that her employer, defendant Martindale-Hubbell (Martindale), a division of Reed Elsevier, Inc., was directly liable for the sexual harassment to which she was subjected by a co-worker because Martindale failed to have in place an effective sexual harassment policy. We reverse.
The facts viewed most favorably to plaintiff, Brill v. Guardian Life Ins. of America, 142 N.J. 520, 536, 666 A.2d 146 (1995), disclose that plaintiff began working for Martindale in 1983 and continues to remain employed with Martindale. She started as a typist and, although she has never held a managerial position, plaintiff has been promoted to various positions. In 2000, she was promoted to senior analyst, the position she currently holds. Her duties as a senior analyst include "signaturing the files, processing the mail, [and] putting information on the system."
Sometime beginning in 2001, plaintiff became the subject of harassing conduct directed towards her by co-defendant Melvin Bowers, a programmer analyst, who worked in a separate department from plaintiff and who was not her supervisor nor a supervisor or manager within his own department. According to plaintiff, although Bowers did not supervise her, Bowers "felt that he had authority" and was "very close" to her supervisor, Barbara Dorner, who plaintiff acknowledged was her friend in addition to being her "boss."
Over the next two years, Bowers continued to subject plaintiff to harassing conduct, which included sending her sexually explicit pictures of "[n]aked women, people having sex, catalogs of Frederick's of Hollywood, Victoria's Secret, [and] people having oral sex." He called plaintiff, either from his home or from his work station, and as plaintiff explained during her deposition,
He would call me on the phone and start playing with himself and want me to listen to him and try to pretend that he was doing things to me, and then I would just tell him I couldn't talk; I had to go see Barbara or somebody was in *319 my cube, and he used to get loud and yell[,] saying he only needs three minutes of my time, don't you dare hang up. And he just wanted to masturbate.
At one time he left a bra and thong underwear, perfume, and a camera at her workstation and called to tell her that he wanted her to take pictures of herself. Plaintiff never reported Bowers' conduct to Dorner or anyone else except another co-worker, Joyce Martini. Martini did not encourage plaintiff to report Bowers' conduct, nor did she inquire of plaintiff why she did not report the sexually harassing conduct.
On July 23, 2003, a mail room supervisor, Rico West, saw one of the inappropriate photographs Bowers sent to plaintiff as he walked by plaintiff's desk. Plaintiff had stopped him to ask whether he knew how to make an e-mail appear as unread. Upon observing the photographs, West urged plaintiff to report the incident or he would have to do so because he could lose his job if he did not report it. Plaintiff told West that she would do so once she spoke to her husband. Plaintiff told her husband about the incidents over the weekend. The following Monday plaintiff told Dorner about Bowers' behavior and Dorner immediately contacted Ed Bigelow, the Director of Human Resources (HR). Bigelow met with plaintiff fifteen minutes later. Bigelow also met with other supervisory employees to discuss Bowers' conduct. Bowers was immediately suspended and two days later fired. Martindale told plaintiff to take as much time off as she needed, and plaintiff did so. She remained on paid leave with full benefits for several months. She returned to employment the following November, resuming her position as senior analyst.
Martindale publishes a Code of Conduct that it distributes to employees that includes the following statement:
The Company will make every reasonable effort to provide an environment free from harassment of any kind toward any individual.... If any employee has questions about any section of these Standards of Conduct, he or she should direct all questions to his or her immediate supervisor, local Human Resources Representative, or the Reed Elsevier Inc. Legal Department.
In 2001, plaintiff signed a form acknowledging that she received written materials from Martindale that included the Code of Conduct. In the early 90s, Martindale distributed memos addressing sexual harassment, which plaintiff contends she never saw. While the distribution list for these memos contained Dorner's name, they did not include plaintiff's name. Plaintiff claims she first saw these memos during the course of the present litigation.
On May 26, 2005, plaintiff filed a three-count complaint against Martindale and Bowers. She alleged that Martindale fostered a hostile work environment which constituted sexual harassment in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Following the completion of discovery, Martindale moved for summary judgment, arguing that because Bowers was a coworker, it could not be liable under the LAD for his conduct, about which it had no knowledge.
The court granted the motion:
The argument of [plaintiff's counsel], once again his argument being that our cause of action here is grounded upon negligence, namely the plaintiff's, the defendant's failure to have an effective anti[-]discrimination policy in effect, well, that's  this court finds while that may serve as a defense in a complaint alleging supervisor/employee type harassment, this is a different situation and there is, drawing all, it's a co-worker *320 situation drawing all reasonable inferences in favor of the non moving party that can be drawn. There's no genuine issue of material fact in dispute for submission to a jury.
The present appeal followed. Plaintiff contends the trial court erred in dismissing her complaint against Martindale on summary judgment "in light of [its] negligence in failing to have an effective sexual harassment policy in place."
Our review of the grant of summary judgment by the trial court is de novo, applying the same legal standard as the trial court under Rule 4:46-2(c). Atlantic Mut. Ins. Co. v. Hillside Bottling Co., Inc., 387 N.J.Super. 224, 230, 903 A.2d 513 (App.Div.), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). A motion for summary judgment should be granted only when the moving party establishes the absence of any genuinely disputed issue of material fact. Brill, supra, 142 N.J. at 539-40, 666 A.2d 146. When the facts are undisputed, we then determine whether the court's application of the law was correctly applied. We accord no special deference to the legal conclusions reached by a trial judge. Atlantic Mut., supra, 387 N.J.Super. at 231, 903 A.2d 513. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)).
In this appeal, we accept plaintiff's version of the facts as true and give plaintiff the benefit of all reasonable inferences from the facts. Baliko v. Stecker, 275 N.J.Super. 182, 186, 645 A.2d 1218 (App. Div.1994), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999). In doing so, we initially observe that the trial court determined that there "may be contested issues of fact with regard to the existence or non existence of [a sexual harassment] policy[,]" but dismissed the complaint because plaintiff's claims arose in the context of co-worker harassment about which Martindale had no actual knowledge.
In Lehmann v. Toys `R' Us, the Court recognized that employer liability for hostile work environment claims may be advanced under a negligence theory premised upon the employer's failure to have in place effective sexual harassment policies and that such claims may be based upon agency principles or direct liability. 132 N.J. 587, 621-23, 626 A.2d 445 (1993). The Court declined, however, to set forth a standard of negligence governing such claims. Id. at 621, 626 A.2d 445. In our view, in the absence of such an articulated standard, a negligence-based theory of liability must be analyzed under traditional negligence principles, which draw upon notions of fairness, common sense, and morality. Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 401, 895 A.2d 1143 (2006) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 625 A.2d 1110 (1993)).
In recognizing the viability of a cause of action based upon the absence of an effective sexual harassment policy, the Court in Lehmann stated that
common sense suggests that sexual harassment at the workplace is foreseeable, even where anti-harassment policies exist. Although estimates of the incidence of sexual harassment in the workplace vary, all estimates indicate that the problem is widespread....
In light of the known prevalence of sexual harassment, a plaintiff may show that an employer was negligent by its failure to have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms....
Employers that effectively and sincerely put five elements into place are successful at surfacing sexual harassment *321 complaints early, before they escalate. The five elements are: policies, complaint structures, and that includes both formal and informal structures; training, which has to be mandatory for supervisors and managers and needs to be offered for all members of the organization; some effective sensing or monitoring mechanisms, to find out if the policies and complaint structures are trusted; and then, finally, an unequivocal commitment from the top that is not just in words but backed up by consistent practice.
Similarly, given the foreseeability that sexual harassment may occur, the absence of effective preventative mechanisms will present strong evidence of an employer's negligence.
[Lehmann, supra, 132 N.J. at 621-22, 626 A.2d 445 (citations omitted) (internal quotation mark omitted).]
There are no published New Jersey decisions that have addressed employer liability for co-worker harassment based upon the negligent failure to have in place effective and well-publicized sexual harassment policies. However, this theory has been recognized in federal decisions, to which we often look for guidance in determining the scope of protection afforded to plaintiffs in discrimination cases. Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 107, 570 A.2d 903 (1990).
In Meritor Sav. Bank v. Vinson, albeit a case involving sexual harassment committed by a supervisor, the Supreme Court expressly rejected the employer's position that "the mere existence of a grievance procedure and a policy against discrimination, coupled with an [employee's] failure to invoke that procedure, must insulate [an employer] from liability." 477 U.S. 57, 72-73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49, 63 (1986). The Court noted that the employer's "general nondiscrimination policy did not address sexual harassment in particular, and thus did not alert employees to their employer's interest in correcting that form of discrimination." Ibid.
More recently, in Ocheltree v. Scollon Prods., 335 F.3d 325 (4th Cir.2003), cert. denied, 540 U.S. 1177, 124 S.Ct. 1411, 158 L.Ed.2d 77 (2004), a case involving co-worker harassment, the court upheld the district court's denial of defendant's motion, following a jury verdict, for judgment as a matter of law, Fed.R.Civ.P. 50, the Fourth Circuit agreed that a reasonable jury could have made the basic finding that the employer did not provide the employee with reasonable avenues for voicing her sexual harassment complaints and under such circumstances constructive knowledge of the harassing conduct may be imputed to the employer. 335 F.3d at 333. The court observed that it was debatable whether the defendant actually had a sexual harassment policy, noting, "[n]o company document mentions sexual harassment, and there is no evidence that the company conducted any training to prevent sexual harassment." Id. at 334.
Against this analytical framework, the issues properly before the motion judge were (1) whether Martindale's discrimination policy provided a reasonable avenue through which plaintiff could have voiced her complaints about Bowers and, if not, (2) whether the absence of such an effective policy was causally related to any harm plaintiff claims she suffered, with this latter issue related to proximate cause, generally a jury question. The motion judge did not address these issues. Rather, he acknowledged that a genuinely disputed issue of fact "may" exist as to whether defendant had an effective sexual harassment policy. The court did not make any specific findings on this issue because of its conclusion that such a finding *322 was irrelevant in view of the fact that the harassment involved a co-worker rather than supervisory sexual harassment.
Although Lehmann involved supervisory sexual harassment, we do not read the Court's recognition of a negligence-based theory of liability arising from an employer's failure to have effective preventive mechanisms in place as limited to claims of supervisory harassment. To do so could potentially discourage employers from adopting proactive sexual harassment policies that are well-publicized and directed to all employees.
We therefore reverse the grant of summary judgment and remand for further proceedings. In reversing summary judgment, we make no determination that the proofs before the court were sufficient to survive summary judgment on a negligence-based theory. This issue, in the first instance, should be addressed before the trial court. As the Court made clear in Lehmann, supra, the absence of an effective sexual harassment policy does not automatically constitute negligence, nor does the existence of such a policy demonstrate the absence of negligence. 132 N.J. at 623, 626 A.2d 445.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Martindale-Hubbell, a division of Reed Elsevier, Inc., was improperly pled as Reed Elsevier, Inc. d/b/a Reed Reference Publishing.
[2] Defendant Melvin Bowers was dismissed without prejudice by order dated June 11, 2007.