NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0048-16T3

DOROTHY SPRUCE,

 Plaintiff-Appellant,

v.

ROUTE 18 SHOPPING CENTER
ASSOCIATES, BURGER KING
CORP., PICTURE PERFECT
LANDSCAPING, LLC, ROESCHEISE
ASSOCIATES, and ABOVE ALL
LANDSCAPING,

 Defendants,

and

IPT, LLC d/b/a FM FACILITY
MAINTENANCE, NORTHWEST COMPANIES,
INC., and PINO'S LANDSCAPING,

 Defendants-Respondents.
_______________________________________

 Submitted September 19, 2017 – Decided November 16, 2017

 Before Judges Reisner and Hoffman.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Docket No. L-
 5162-13.

 Falcon Law Firm, LLC, attorneys for appellant
 (Alexander R. DeSevo, on the briefs).
 Faust Goetz Schenker & Blee, LLP, attorneys
 for respondent IPT, LLC (David I. Blee and
 Laura A. Lelio, on the brief).

 Callahan & Fusco, LLC, attorneys for
 respondent Northwest Companies, Inc. (Ryan D.
 Lang, on the brief).

 Kent & McBride, PC, attorney for respondent
 Pino's Landscaping (Christopher D. Devanny, on
 the brief).

PER CURIAM

 In 2012, plaintiff injured her right knee when she tripped

over a mulch-covered tree stump at the East Brunswick Burger King

restaurant, where she worked as the general manager. In 2013,

plaintiff filed a personal injury complaint against various

defendants. She now appeals from a series of July 27, 2016 Law

Division orders granting summary judgment dismissal of her claims

against defendants FM Facility Maintenance (FM), Northwest

Companies, Inc. (Northwest), and Pino's Landscaping (Pino's). We

affirm.

 We summarize the pertinent facts, viewing them in a light

most favorable to plaintiff, the party against whom summary

judgment was sought. Brill v. Guardian Life Ins. Co. of Am., 142

N.J. 520, 540 (1995); see R. 4:46-2.

 On April 2, 2012, plaintiff arrived at the Burger King parking

lot between 8:45 and 8:50 a.m. As she walked through the parking

 2 A-0048-16T3
lot to enter the restaurant, she noticed a newspaper blowing in

the wind and observed a portion become stuck underneath some

bushes, about ten feet from the restaurant door. The area

contained approximately three to four bushes surrounded by mulch.

 Plaintiff walked towards the bushes intending to pick up the

newspaper. As she stepped off the sidewalk and onto the mulch,

she "tripped over the stump" and landed on her knee, with resulting

injury. According to plaintiff, she did not see the stump because

"[i]t was covered with mulch."

 Plaintiff stated Burger King did not require her to inspect

the landscaping work outside the restaurant, but she often took

it upon herself to do so. Plaintiff did not notice any issues in

the area of the stump prior to her injury.

 At the time of plaintiff's accident, Burger King had a

contract with defendant FM, effective August 31, 2011, to perform

maintenance services for the restaurant, including landscaping,

snow plowing, and general repairs. FM, in turn, retained defendant

Northwest as an independent contractor, effective September 13,

2011, to perform landscaping services. Northwest then entered

into a subcontract agreement with defendant Pino's, whereby Pino's

agreed to provide exterior maintenance services at the restaurant.

 The contract between Northwest and Pino's required Pino's to

perform various "in scope" services defined in attached schedules.

 3 A-0048-16T3
The contract further provided for Pino's to "occasionally complete

'out of scope' services," but such services required prior approval

of Northwest. The list of "in scope" services specifically noted

that mulching was "not approved." Moreover, according to the

owner of Pino's, Pino Tortorici,1 the contract did not authorize

Pino's to remove tree stumps; instead, Pino's first had to obtain

a "work order" before completing such work.

 Pursuant to its contract with Northwest, Pino's expected to

begin providing regular monthly maintenance to the subject Burger

King on April 1, 2012. However, on March 27, 2012, the Northwest

account manager emailed Pino to inform him Burger King requested

a "one[-]time early service" at the restaurant. Pino testified

at deposition that his company performed a "spring cleanup" on

March 30, 2012. This process involved removing loose debris such

as leaves, sticks, and branches from the grass, mulch beds, and

sidewalks; cutting the grass; and "blow[ing] off" the lawn.

According to Pino, the purpose of the "spring cleanup" was to

"give [the premises] a one[-]time run-through and clean it up and

make it look nice before the actual work in April was started."

 In her pleadings, plaintiff alleged defendants negligently

maintained the premises by allowing it to become hazardous and

1
 We refer to Pino Tortorici as "Pino" and to his company as
"Pino's."

 4 A-0048-16T3
negligently failed to remove the debris that caused her injury.

At the completion of discovery, defendants moved for summary

judgment.

 At the summary judgment hearing, Judge Arnold L. Natali, Jr.

heard oral argument and then addressed plaintiff's claims against

each defendant separately. The judge granted summary judgment to

each remaining defendant, including Pino's, Northwest, and FM,

finding plaintiff failed to identify a duty that any defendant

arguably breached.

 In a supplemental written opinion, Judge Natali expanded on

his reasoning, first finding Pino's duty "was limited by the scope

of the services for which [it] was hired." He noted Pino's had

not been hired to perform mulch services, and because the cleanup

was Pino's first time on the premises, it did not create the

dangerous condition. Rather, an unidentified landscaping company

had performed work prior to Pino's. The judge also noted, "While

[Pino] may have observed tree stumps on limited areas of the

property, there is nothing in the record to indicate that [Pino]

became aware of the particular condition at the location where

plaintiff allegedly fell." The judge thus found neither duty nor

breach.

 Next, addressing Northwest and FM, the judge concluded:

 5 A-0048-16T3
 Nothing in the contract imposed a duty upon
 either company to inspect and ensure the
 landscaping services . . . previously
 performed by other vendors. . . . Thus, FM
 and Northwest would only have a contractual
 obligation to correct the hazardous condition
 . . . if it had resulted from an unsatisfactory
 service performed by one of its vendors.

 The judge also addressed the opinion of plaintiff's expert,

an engineer, who opined that FM's failure "to properly and safely

maintain this property in compliance with the minimum requirements

of the Property Maintenance Code [of] the Township of East

Brunswick caused this accident." The judge rejected the expert's

opinion because "[t]he opinion is entirely speculative, untethered

to the facts and therefore 'net.'" The judge found no "factual

predicate" for the expert's contention that the local property

code applied here to make FM "responsible for 'properly and safely'

maintaining the property under all circumstances."

 Judge Natali therefore granted summary judgment to FM,

Northwest and Pino's, finding

 no basis upon which the court could impose a
 duty upon the defendants, either pursuant to
 a contractual obligation or under common
 law . . . . Simply put, the record does not
 create a factual question that any defendant
 had anything to do with the creation of the
 alleged dangerous condition.

 6 A-0048-16T3
 II.

 In reviewing a grant of summary judgment, we apply the same

standard under Rule 4:46-2(c) that governs the motion court. See

Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We must "consider

whether the competent evidential materials presented, when viewed

in the light most favorable to the non-moving party, are sufficient

to permit a rational factfinder to resolve the alleged disputed

issue in favor of the non-moving party." Brill, 142 N.J. at 540.

 "To establish a prima facie case of negligence, a plaintiff

must establish the following elements: (1) duty of care, (2) breach

of that duty, (3) proximate cause, and (4) damages." D'Alessandro

v. Hartzel, 422 N.J. Super. 575, 579 (App. Div. 2011). Whether a

party owes a legal duty, as well as the scope of the duty owed,

are questions of law for the court to decide. Carvalho v. Toll

Bros. & Developers, 143 N.J. 565, 572 (1996). "The inquiry has

been summarized succinctly as one that 'turns on whether the

imposition of such a duty satisfies an abiding sense of basic

fairness under all of the circumstances in light of considerations

of public policy.'" Olivo v. Owens-Illinois, Inc., 186 N.J. 394,

401 (2006) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426,

439 (1993)). We examine foreseeability, Clohesy v. Food Circus

Supermarkets, Inc., 149 N.J. 496, 502-03 (1996), as well as such

factors as "the relationship of the parties, the nature of the

 7 A-0048-16T3
attendant risk, the opportunity and ability to exercise care, and

the public interest in the proposed solution." Acuna v. Turkish,

192 N.J. 399, 414 (2007) (internal quotation marks omitted), cert.

denied, 555 U.S. 813, 129 S. Ct. 44, 172 L. Ed. 2d 22 (2008).

 On appeal, plaintiff raises the following points of argument:

 POINT I

 THE TRIAL COURT'S DECISION THAT RESPONDENTS
 OWED NO DUTY TO APPELLANT REQUIRES A DE NOVO
 REVIEW BY THE APPELLATE COURT BECAUSE DUTY IS
 A QUESTION OF LAW.

 POINT II

 RESPONDENTS WERE NOT ENTITLED TO SUMMARY
 JUDGMENT BECAUSE THE TRIAL COURT JUDGE ERRED
 IN FINDING THAT RESPONDENTS OWED NO DUTY TO
 APPELLANT.

 POINT III

 RESPONDENTS['] PREVENTATIVE MAINTENANCE
 CONTRACTOR SHOULD HAVE INSPECTED THE PREMISES
 AND FOUND THE STUMP.

 POINT IV

 RESPONDENT PINO'S LANDSCAPING HAD ACTUAL OR
 CONSTRUCTIVE KNOWLEDGE OF THE STUMP AND HAD A
 DUTY TO TAKE REASONABLE STEPS TO ADDRESS THE
 HAZARD.

 POINT V

 ADEQUATE NOTICE EXISTED OF THE HAZARDOUS
 STUMPS AT THE SUBJECT PROPERTY.

 8 A-0048-16T3
 POINT VI

 NORTHWEST HELD A SUBSTANTIAL RIGHT TO CONTROL
 PINO’S ACTIVITIES, SUCH THAT NORTHWEST CAN BE
 DEEMED VICARIOUSLY LIABLE FOR PINO’S
 NEGLIGENCE.

 POINT VII

 FM WAS AWARE OR SHOULD HAVE BEEN AWARE OF THE
 HAZARD BY REVIEWING PROPERTY PHOTOS OR
 REVIEWING PINO'S JOB PERFORMANCE.

 POINT VIII

 RESPONDENTS DISREGARDED EAST BRUNSWICK'S
 PROPERTY MAINTENANCE CODE AND THEIR FAILURE
 TO COMPLY CAUSED THE ACCIDENT.

 We find no merit in any of these arguments and conclude they

lack sufficient merit to warrant discussion in a written opinion.

R. 2:11-3(e)(1)(E). We affirm substantially for the reasons set

forth by Judge Natali in his cogent written opinion issued on July

14, 2016. We add the following comments.

 While the record reflects that Pino's performed a spring

clean-up at the subject Burger King on March 30, 2012, three days

before plaintiff's accident, Northwest had issued Pino's a very

specific and detailed scope of work order, which did not include

stump removal and specifically prohibited mulching. Because the

scope of work provision of Pino's contract specifically prohibited

mulching, Pino believed that stump removal was also not authorized.

Additionally, the only work Pino's was specifically authorized to

 9 A-0048-16T3
perform on March 30 was a "spring clean-up," which meant mowing

the lawn and other limited services, such as picking up loose

trash. Pino had never been to this Burger King before and was not

hired to complete a safety inspection. A photo of the premises,

allegedly taken right after Pino's completed its work, shows no

visible stumps in the mulch beds.

 The record reflects the subject stump was a hidden danger.

The record contains no evidence that any defendant performed the

mulching that resulted in the concealment of the stump, or had any

responsibility for removing it. As the manager of the restaurant,

plaintiff took it upon herself to inspect the landscaping work;

as a result, she was in a good position to identify the alleged

dangerous condition in the landscaping, and she observed none.

 We further note that Judge Natali correctly rejected the

opinions of plaintiff's expert under the net opinion doctrine. An

expert's "bare conclusions, unsupported by factual evidence" are

inadmissible as a net opinion. Buckelew v. Grossbard, 87 N.J.

512, 524 (1981). The expert is required "to give the why and

wherefore of his [or her] expert opinion, not just a mere

conclusion." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540

(App. Div.), certif. denied, 145 N.J. 374 (1996). As the judge

found, the record lacks the essential "factual predicate" for the

 10 A-0048-16T3
expert's opinion that the municipal property code applied to make

FM responsible for safely maintaining the subject property.

 Affirmed.

 11 A-0048-16T3