**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4062-17T4

SONNY CABRERA, JR.,

    Plaintiff-Appellant,

v.

FAIRLEIGH DICKINSON
UNIVERSITY,

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

KB ELECTRIC SERVICES
COMPANY, INC., and THE
HARTFORD INSURANCE
COMPANY,

    Third-Party Defendants.

_____

        Argued September 23, 2019 – Decided October 8, 2019

        Before Judges Fasciale and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law
        Division, Passaic County, Docket No. L-2883-15.

Dennis G. Polizzi argued the cause for appellant (Pitts & Polizzi, LLP, attorneys; Dennis G. Polizzi, of counsel and on the brief).

Richard Evan Barber argued the cause for respondent Fairleigh Dickinson University (Haworth Barber & Gertsman LLC, and Post & Schell, PC, attorneys; Richard Evan Barber, Richard B. Wickersham, Jr. and Matthew Dean Johnson, on the brief).

PER CURIAM

In this personal injury case, defendant Fairleigh Dickinson University hired KB Electric Services Company, Inc. (KB) to change lights on top of its library. Defendant knew about a latent defect on the roof, but failed to warn anyone at KB of the danger. Plaintiff, an employee of KB, fell off the roof because of this dangerous condition. The judge held that defendant owed plaintiff – and KB – no duty to warn about the danger.[1] Under the facts here, we disagree and reverse.

Summary judgment may be granted when, considering the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R.

---

[1] The judge originally found that fact issues precluded summary judgment to defendant. On reconsideration, the judge granted summary judgment to defendant holding that no duty existed. Plaintiff appeals from an order denying his subsequent motion for reconsideration of the order granting summary judgment to defendant.

4:46–2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). When reviewing an order granting summary judgment, we apply the same standards that the trial court applies when ruling on the motion. Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013).

Ordinarily, plaintiff would access the roof by using a KB bucket truck. From the bucket, he would do his repair work, while wearing a safety fall protection harness that was attached to the bucket. But in this instance, defendant interfered with that practice. After directing plaintiff where to work, defendant parked its own truck where the bucket truck needed to be. Plaintiff therefore was unable to access the roof from the bucket. Moreover, plaintiff was unable to access the roof from inside the library. Plaintiff found an alternate way to reach the roof, and while there, leaned on a balustrade to retrieve pliers that another worker had tossed to him. Plaintiff fell when the balustrade gave way.

It is undisputed that a dangerous condition existed. The day after the accident, defendant's engineer inspected the balustrade and issued a report. In his report, he stated:

> The accident occurred at the northeast corner of the existing Library building over the Orangerie Room
> . . . .

The balustrade is made using cast stone material. The balustrade at the location of the failure consists of six (6) balusters supporting a continuous [capstone] spanning horizontal from the solid piers at each side of the balustrade. . . .

All of the six balusters failed at their thinnest section, approximately [five] (5) inches above the base. . . . The top horizontal stone also failed at the connections of the [capstone] over the solid pier on each side. . . . The top stone has a butt joint at the face of the solid piers and is only continuous over the balusters. . . . This butt joint appears to have been grouted, however not much grout was attached to the remaining [capstones] over the solid piers. . . .

The connection of the balusters to the [capstone] appears to be a mortar connection along with a mortar connection at the butt joint between the pieces of [capstone]. We did not identify any type of mechanical fasteners at any connections. Also, the balustrades are unreinforced.

After performing a general inspection of the remaining in place balustrade around the perimeter of the roof, it appears that most of the mortar joints between the butt joints in the [capstones] have deteriorated, with some joints being caulked in the past. . . . The mortar joint between the top of the balusters and the [capstone] is also cracked and loose at some locations.

However, at the time of our inspection, the remaining balustrades appear that they would be substantial and appear[] to be stable under normal anticipated loading conditions, except for major seismic activity.

The solid piers at each side of the balustrades also appear to be quite substantial and would be stable under

A-4062-17T4

anticipated normal type loading conditions, except for major seismic activity. . . .

[Emphasis added.]

Indeed, defendant's representative testified that the university repaired the balustrades before the accident. He explained that before the accident, the university joint caulked the balustrades "where the accident occurred." He testified that before the accident, he had seen "mismatching caulk" in the area of the accident. This representative also said he knew that the repair work included caulking "the tops of the rails"; the caulking occurred on the "lower level on the upper facing joints" of the balustrades; and that the work was done to address "waterproofing issues." He explained that the water infiltration "deteriorates mortar . . . in the joint[s]."

Although defendant knew about the latent dangerous condition, and even though defendant prevented plaintiff from accessing the roof using the bucket, defendant remained silent about deteriorating joints, waterproof problems, mismatching caulk, and previous repairs to the top of the rails and facing joints. We emphasize that the dangerous condition – the unstable balustrades – remained not visible to plaintiff, and that the balustrades were unrelated to the electrical work.

A-4062-17T4

"An occupier of land owes a duty to his invitee to use reasonable care to make the premises safe. . . ." Olivo v. Owens–Illinois, Inc., 186 N.J. 394, 406 (2006) (quotation marks and citation omitted). And a landowner has "'the duty to provide a reasonably safe working place'" for an independent contractor he or she hires. Muhammad v. N.J. Transit, 176 N.J. 185, 199 (2003) (quoting Wolczak v. Nat'l Elec. Prod. Corp., 66 N.J. Super. 64, 75 (App. Div. 1961)). "The landowner's duty includes the obligation of making a reasonable inspection to discover defective and hazardous conditions." Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 66 (App. Div. 1986). Here, defendant knew the dangerous condition existed before the accident.

We fully understand defendant's contention as to independent contractors. "[T]he law carves out an exception to the requirement that premises be made safe for an independent contractor when the contractor is invited onto the land to perform a specific task in respect of the hazard itself." Olivo, 186 N.J. at 406-07. "'[T]he duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform.'" Id. at 407 (quoting Muhammad, 176 N.J. at 199) (emphasis added).

A-4062-17T4

Specifically, the duty "does not entail the elimination of operational hazards which are <u>obvious and visible</u> to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform." <u>Sanna</u>, 209 N.J. Super. at 67 (emphasis added); <u>see also</u> <u>Wolczak</u>, 66 N.J. Super. at 75; <u>Dawson v. Bunker Hill Plaza Assocs.</u>, 289 N.J. Super. 309, 318 (App. Div. 1996). This exception exists because "'[t]he landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly.'" <u>Muhammad</u>, 176 N.J. at 199 (quoting <u>Wolczak</u>, 66 N.J. Super. at 75).

But here, the dangerous condition did not pertain to an operational hazard that was obvious and visible to plaintiff upon ordinary observation. It was hidden; only defendant knew about it. And the dangerous condition was not part of or incidental to repairing light bulbs. Furthermore, the engineer verified that the balusters were made of cast stone material, and that the balusters and the solid piers "appear[ed] [to] be substantial and appear[ed] to be stable under

A-4062-17T4

normal anticipated loading conditions, except for major seismic activity."  Only

defendant knew that this was not the case.[2]

      Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] We conclude defendant's argument—that no duty exists because the balusters were ornamental—is without merit to warrant discussion in a written opinion. R. 2:11–3(e)(1)(E).  We nevertheless add that the case law cited by defendant in its merits brief for that proposition is misplaced entirely.