| | | |
|---|---|---|
| THE STATE OF NEW JERSEY | : | SUPERIOR COURT OF NEW JERSEY |
| | | LAW DIVISION (CRIMINAL) |
| v. | : | ATLANTIC COUNTY |
| | | CASE NUMBER # _____ |
| DEFENDANT | : | INDICTMENT NUMBER # _____ _____ |
| | : | WAIVER OF TRIAL BY JURY |
| | : | |

The above-named defendant, charged with _____

_____ _____

_____ _____

having been advised the nature of the charge(s) against him/her and of his/her right to trial by jury, does hereby waive trial by jury, and requests to be tried by the Court.

Dated at Mays Landing, New Jersey, the _____ day of

_____ , 199

_____
DEFENDANT

Signed and delivered in the presence of

_____

Approved:

_____
J.S.C.

CR-100-93

## 57 A.3d 1121

WILLIAM NIELSEN AND DEBRA NIELSEN, PLAINTIFFS–RESPONDENTS, v. WAL–MART STORE # 2171, DEFENDANT–APPELLANT, AND NASSAU SHOPPING CENTER CONDOMINIUM ASSOCIATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 23, 2012—Decided January 11, 2013.

252

Before Judges FISHER, ALVAREZ and ST. JOHN.

*Patrick J. McDonnell* argued the cause for appellant (*McDonnell & Associates,* attorneys; *Mr. McDonnell* and *Lindsey S. Forshay,* on the brief).

*David T. Wheaton* argued the cause for respondents (*Levinson Axelrod,* attorneys; *Mr. Wheaton,* on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, defendant Walmart Store # 2171—the owner of a unit in a multi-unit commercial condominium developed by defendant Nassau Shopping Center Condominium Association (the developer)—argues it had no duty to warn its independent contractor's employee of a hazardous condition in an area that the developer was contractually bound to repair and maintain. Because the particular relationship of the parties, the nature of the attendant risk, Walmart's opportunity and ability to exercise care, and the public interest all balance in favor of the imposition of a duty on Walmart in this setting, we affirm the judgment entered in plaintiff's favor at the conclusion of a jury trial.

Plaintiff William Nielsen was injured on April 27, 2006, when he slipped and fell at the Nassau Park Shopping Center in Princeton. Nielsen was present at the site on behalf of his employer, Ecolab, Inc., which was retained by Walmart to exterminate pests. Walmart directed plaintiff, in the course of setting rodent traps, to access the various store entrances from the exterior of the unit owned by Walmart.[1] The exterior area around the perimeter of Walmart's unit, where plaintiff slipped and fell,[2] was owned and

---

[1] Walmart's unit consists of the structure and a small outside area not fully enclosed that appears on the master deed to be an area designed for the sale of garden materials. There is no dispute that plaintiff's fall did not occur within the boundaries of Walmart's unit.

[2] In the course of setting traps, plaintiff was walking around the exterior of Walmart's unit when he encountered an area of loose sand and gravel that had

maintained by the developer. In the master deed governing its relationship with Walmart, the developer agreed to "supervise, administer, operate, manage, insure, repair, replace and maintain" the common elements, including the area in question.

Plaintiff and his wife commenced this action on April 16, 2008, against Walmart and fictitious defendants. More than two years after the action's accrual, plaintiff amended his complaint to join the developer, which soon thereafter successfully moved for summary judgment on statute-of-limitations grounds; Walmart did not oppose the developer's motion.

Walmart later moved for summary judgment, arguing it could not be held liable because plaintiff's fall occurred outside the boundaries of its unit and Walmart had not contractually agreed to maintain or repair the area in question; plaintiff cross-moved for summary judgment on this liability issue. Both motions were denied on July 9, 2010.

In November 2010, a few weeks prior to a scheduled trial date, Walmart sought leave to file a third-party complaint against the developer. The motion was denied on December 17, 2010, not only because Walmart filed no opposition to the developer's motion for summary judgment, but also because the trial was scheduled to occur a few weeks later.

During a five-day trial, the jury heard evidence concerning the manner in which the accident occurred and the nature and extent of plaintiff's injuries. At the trial's conclusion, the jury returned a verdict, finding Walmart eighty percent negligent and plaintiff twenty percent negligent, and awarding damages of $400,000 in favor of plaintiff and $125,000 to plaintiff's wife on her per quod claim.

After unsuccessfully moving for judgment notwithstanding the verdict or new trial, Walmart filed this appeal, arguing, first, that

---

accumulated where a grassy area ended and an asphalted area began. Plaintiff testified it was "like stepping on marbles."

the motion judge abused his discretion in denying Walmart's motion to join the developer as a party. Second, Walmart argues that the trial judge erred in denying its motion for judgment notwithstanding the verdict because, Walmart claims, the judge was mistaken: (a) in determining, as a matter of law, that plaintiff was Walmart's business invitee; (b) in denying Walmart's request for a jury instruction concerning plaintiff's status as the employee of an independent contractor; and (c) in failing to distinguish between the duty owed by a business owner regarding conditions on and off its premises. And, third, Walmart argues the trial judge erred in denying its motion for a new trial.

■ We find insufficient merit in the first and third of these arguments, as well as that part of Walmart's second argument regarding plaintiff's status as a business invitee, to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E). We would add only, with regard to the first point, that Walmart's failure to oppose the developer's summary judgment motion, and its considerable delay in seeking leave to assert a third-party complaint against the developer until a few weeks before trial, more than amply supported the judge's exercise of discretion in denying the motion. *See Du–Wel Prods., Inc. v. U.S. Fire Ins. Co.,* 236 *N.J.Super.* 349, 364, 565 *A.*2d 1113 (App.Div.1989), *certif. denied,* 121 *N.J.* 617, 583 *A.*2d 316 (1990).[3] And, as to the third point, Walmart's arguments in support of its claim for a new trial are largely the same arguments posed in its second point, which we reject for the reasons that follow.

■ Consideration of Walmart's second point commences with an understanding that "[w]hether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all the

---

[3] We also note that Walmart did not preserve this issue for review because it did not identify the December 17, 2010 order in its notice of appeal. *See 1266 Apartment Corp. v. New Horizon Deli, Inc.,* 368 *N.J.Super.* 456, 459, 847 A.2d 9 (App.Div.2004).

circumstances in light of considerations of public policy." *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993); *see also Monaco v. Hartz Mountain Corp.,* 178 *N.J.* 401, 418, 840 *A.*2d 822 (2004); *Goldberg v. Housing Auth. of Newark,* 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962). The imposition of a duty requires the balancing of several factors, including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Hopkins, supra,* 132 *N.J.* at 439, 625 *A.*2d 1110; *see also Monaco, supra,* 178 *N.J.* at 418, 840 *A.*2d 822; *Goldberg, supra,* 38 *N.J.* at 583, 186 *A.*2d 291.

Our understanding of the legal principles applicable here must commence with an understanding of how the common law has progressed to this point. Or, as better stated by Justice Holmes during his series of groundbreaking lectures in 1880, "[t]he history of what the law has been is necessary to the knowledge of what the law is." Oliver W. Holmes, Jr., *The Common Law* 26 (Barnes & Noble Publishing 2004).

Not so long ago, our common law incorporated a well-established general rule absolving landowners of liability for injuries resulting from the condition of abutting sidewalks. *Yanhko v. Fane,* 70 *N.J.* 528, 532, 362 *A.*2d 1 (1976); *see also Hayden v. Curley,* 34 *N.J.* 420, 428, 169 *A.*2d 809 (1961); *Moskowitz v. Herman,* 16 *N.J.* 223, 225, 108 *A.*2d 426 (1954); *Zemetra v. Fenchel Realty Co., Inc.,* 134 *N.J.L.* 358, 359, 47 *A.*2d 890 (Sup.Ct. 1946), *aff'd o.b.,* 135 *N.J.L.* 205, 50 *A.*2d 895 (E. & A.1947). The common law, however, progressed away from this rule when our Supreme Court announced *Stewart v. 104 Wallace Street Inc.,* 87 *N.J.* 146, 157, 432 *A.*2d 881 (1981), holding that "commercial landowners are responsible for maintaining in reasonably good condition the [public] sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." The *Stewart* Court's rejection of the common law rule, which *Yanhko* had endorsed only five years earlier, was based on the greater weight attributed to the public policies favoring com-

pensation for innocent pedestrians and the imposition of a strong incentive against the occurrence of future harm rather than the weight given to contractual limitations and property boundaries.

These weightier policies continue to mold the common law. *See Prosser and Keeton on Torts,* § 4 at 15 (5th ed.1984) (observing that "the law of torts is a battleground of social theory"). Once *Stewart* broke new ground, the duties imposed by our courts on the occupiers of land advanced considerably. In *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 395–96, 456 *A.*2d 518 (1983), the Court imposed sidewalk liability on an abutting owner whose negligent failure to clear snow and ice from the sidewalk caused a pedestrian's injuries. And, as varying factual circumstances have arisen, we have imposed sidewalk liability on the owner of an abutting vacant commercial building, *Gray v. Caldwell Wood Prods., Inc.,* 425 *N.J.Super.* 496, 501–02, 42 *A.*3d 192 (App.Div.2012),[4] and we have imposed sidewalk liability on not just commercial owners but also their tenants, *Antenucci v. Mr. Nick's Mens Sportswear,* 212 *N.J.Super.* 124, 128–30, 514 *A.*2d 75 (App.Div.1986); *see also Vasquez v. Mansol Realty Assoc.,* 280 *N.J.Super.* 234, 237–38, 655 *A.*2d 82 (App.Div.1995) (imposing liability on a commercial owner whose tenant negligently failed to remove ice or snow as contractually obligated).

The notion that a land occupier's duty of care extends only as far as the boundaries of its property—the ostensible central thesis of Walmart's argument—is simply out of step with the modern course of the common law. In *Monaco, supra,* 178 *N.J.* at 415–17, 840 *A.*2d 822, the Court cited with approval numerous decisions of this court and trial courts that support the imposition of liability regarding abutting sidewalks, public roadways and other areas beyond a property's perimeter. *See Zepf v. Hilton Hotel &*

---

4 We distinguished *Abraham v. Gupta,* 281 *N.J.Super.* 81, 85–86, 656 *A.*2d 850 (App.Div.), *certif. denied,* 142 *N.J.* 455, 663 *A.*2d 1362 (1995), which held that no duty could be imposed on an owner of vacant property for the condition of abutting sidewalks, because in *Gray* the building had the potential to generate income. 425 *N.J.Super.* at 501–02, 42 *A.*3d 192.

*Casino,* 346 *N.J.Super.* 6, 16, 786 *A.*2d 154 (App.Div.2001) (finding casino owner had a duty towards an employee regarding criminal activity on property's "perimeter"); *Mulraney v. Auletto's Catering, Nat. Valet Parking, Inc.,* 293 *N.J.Super.* 315, 319, 321–22, 680 *A.*2d 793 (App.Div.) (noting a "duty extends beyond a business simply safeguarding its customers from dangerous physical conditions on its property" in imposing duty when plaintiff was struck by a car while crossing an unlit county road from defendant's property to parking lot across the street), *certif. denied,* 147 *N.J.* 263, 686 *A.*2d 764 (1996); *Warrington v. Bird,* 204 *N.J.Super.* 611, 617, 499 *A.*2d 1026 (App.Div.1985) (imposing a duty when plaintiff was injured crossing a public street from defendant's parking lot to defendant's restaurant), *certif. denied,* 103 *N.J.* 473, 511 *A.*2d 653 (1986); *Jackson v. K–Mart Corp.,* 182 *N.J.Super.* 645, 650–51, 442 *A.*2d 1087 (Law Div.1981) (imposing duty regarding patrons' ingress and egress over a public sidewalk, over which defendant had no control, from parking lot to defendant's store).[5]

Walmart argues that it lacked ownership or control of the area where plaintiff was injured and that this alone should free it of any duty of care. If true,[6] this circumstance has relevance, but "our traditional jurisprudence clearly recognizes that neither ownership nor control is the sole determinant ... when obvious danger to an invitee is implicated." *Monaco, supra,* 178 *N.J.* at 417, 840 *A.*2d 822. Although Justice Long expressed that holding for the Court with regard to the extent of liability on a commercial landlord, we find no principled reason to view *Monaco* as limited to owners or landlords or, in this case, a commercial condominium

[5] Although not cited by the *Monaco* Court as an example of the proper expansion of the common law in this area, we also determined in *Antenucci, supra,* 212 *N.J.Super.* at 128, 514 *A.*2d 75, that "the policy considerations underlying the holding in *Stewart* have equal applicability in this case to a lessee who is in exclusive possession of commercial premises abutting a sidewalk."

[6] That the master deed obligated the owner to "repair, replace and maintain" the common elements did not preclude Walmart from taking similar action for the protection of foreseeable users.

developer. The common law's progression should not stop because of the labels adopted by the parties in defining their relationship when an innocent individual, not a party to that relationship, is injured by the condition of—or the failure to warn of the condition of—abutting property or nearby areas that an invitee might foreseeably encounter. Simply because Walmart owns only the building from which it conducts its business and not the abutting perimeter or other common elements should not alone determine the duty it owes to its invitees.[7]

That Walmart had not contractually agreed to maintain or repair the area where plaintiff was injured is simply one factor to be considered in determining whether a duty of care should be imposed. In our view, this factor carries little weight. To be sure, as between Walmart and the developer, the developer was saddled with the duty to maintain or repair. But plaintiff, as well as others invited to make foreseeable uses of the premises, should not be limited by these contractual arrangements. We find the private contractual arrangement of duties between unit owner and developer to have little weight because, otherwise, a commercial unit owner—or, as in *Kandrac*, a commercial tenant—could blithely turn a blind eye to any defects or hazards in common areas not owned by the unit owner or tenant but foreseeably used by their invitees and passersby. *See, e.g., Murray v. Michalak*, 58 *N.J.*

---

[7] Although there are other differences, we recognize our holding may seem inconsistent with the recent holding of another panel, which considered the liability of a commercial tenant where the owner agreed to repair and maintain the area where the plaintiff was injured. *Kandrac v. Marrazzo's Market at Robbinsville*, 429 *N.J.Super.* 79, 88–90, 57 *A.*3d 11 (App.Div.2012). We view *Kandrac* as unduly dependent upon the assignment of responsibility for a common area defined by the defendant's lease. The content of the lease is a factor to be considered but we do not view it as having the great weight assigned by *Kandrac*. For the same reason, we are not persuaded by *Holmes v. Kimco Realty Corp.*, 598 *F.*3d 115 (3d Cir.2010), and largely agree with the dissent in that case, wherein Judge D. Michael Fisher correctly observed that the other *Hopkins* factors outweigh in similar circumstances a contractual term that imposed the duty to repair and maintain the area in question on the owner and not the tenant. *Id.* at 127–28.

220, 223, 276 *A*.2d 857 (1971) (Proctor, J., dissenting).[8]   The imposition of liability on a commercial condominium unit owner or tenant in these circumstances advances important policy interests by fostering the land occupier's constant vigilance.   We agree with Circuit Judge Fisher's comments in his dissent in *Holmes*, in speaking about the duty of a commercial tenant—a status we view as largely indistinguishable from commercial condominium unit owner—that the imposition of a duty will "encourage[ ] [tenants] to keep a watchful eye over leased premises and give prompt notification to landlords when problems arise."   *Holmes, supra*, 598 *F*.3d at 128.

The other *Hopkins* factors further warrant the imposition of a duty on unit owners or commercial tenants in this setting.   Considering "the relationship of the parties," *Hopkins, supra*, 132 *N.J.* at 439, 625 *A*.2d 1110, we would observe that, in the absence of a duty of care to invitees, an innocent plaintiff is left to ascertain the applicable contractual terms and the developer's identity rather than simply seek relief against the unit owner, whose presence is well known to the plaintiff and for whose benefit the plaintiff is present.   The imposition of a duty also has no great impact and does not unduly interfere with the contractual rights of the developer and unit owner.   Those rights and liabilities may still be upheld and vindicated in our courts;   if a unit owner is ultimately held liable for something that occurs in an area where the developer agreed to bear the risk, the unit owner may seek indemnification from the owner.   While Walmart may have lost that option by failing to oppose the developer's summary judgment motion and by seeking leave to assert an indemnification claim at an unreasonably late stage of the proceedings, that

---

[8] The *Stewart* majority quoted, with approval, *see Stewart, supra*, 87 *N.J.* at 154, 432 *A*.2d 881, Justice Proctor's dissenting comments in *Murray, supra*, 58 *N.J.* at 223, 276 *A*.2d 857, that "[i]t is manifestly unjust to permit a property owner to sit idly by and watch with impunity as his sidewalk deteriorates to a point where it becomes a trap for unwary pedestrians and then to immunize him from liability when the all too foreseeable injuries occur."

strategy should not form the basis for rejecting the imposition of a duty of care.[9]

The "nature of the attendant risk" and "the opportunity and ability to exercise care" factors also favor imposition of a duty of care on an entity in Walmart's position. Here, the evidence reveals that Walmart hired plaintiff's employer to exterminate rodents on a monthly basis. Plaintiff testified that Walmart had a "certain protocol" to which he was expected to adhere. Although the bait stations were kept near the building's entrances, Walmart directed plaintiff to access those entrances by walking around the outside of the building rather than through the building's interior. It was in the course of walking around the exterior that plaintiff encountered loose sand and gravel, causing his fall and resulting injuries. Plaintiff was, thus, utilizing the common area for Walmart's benefit precisely as directed by Walmart.

In considering the imposition of a duty, the court was entitled to assume that Walmart was not only familiar with its unit but also the surrounding perimeter. Here, although it could have permitted plaintiff to access the bait stations from within its premises, Walmart chose instead to direct plaintiff to access the unit's entrances from the outside in the manner we have described. While there is no reason to assume Walmart deliberately directed plaintiff's work so that he would spend most of his time in areas where Walmart might have ostensibly believed it had no liability, Walmart—unlike the developer—had every opportunity to recognize and exercise care with regard to the attendant risk. These circumstances weigh in favor of the imposition of a duty of care on Walmart.

Ultimately, the matter turns on whether the imposition of a duty "satisfies an abiding sense of basic fairness under all the circumstances in light of considerations of public policy." *Hopkins, supra,* 132 *N.J.* at 439, 625 *A.*2d 1110. To summarize, the

---

[9] We express no view as to whether Walmart may yet seek indemnification by way of a separate action.

fact that the developer, and not Walmart, had contractually agreed to "repair, replace and maintain" the area in question provides some weight for insulating Walmart from liability. The other circumstances to which we have alluded, however, carry the day. Walmart, as a unit owner, is fairly chargeable with a duty to be familiar with the perimeter outside its unit and other common areas that its invitees and passersby might foreseeably use. The imposition of a duty encourages a business owner such as Walmart to alert the contractually responsible entity about hazardous conditions. Walmart also directed plaintiff to use the unit's perimeter, and it was in the course of following that direction that plaintiff encountered the area in which he was injured. And Walmart had an adequate remedy—if found liable and held obligated to compensate for an injury occurring on the developer's property—in its right to seek indemnification from the developer. The relationship of the parties, the attendant risks, the nature of the risks, and simply fairness to the innocent plaintiff, warrant the imposition of a duty of care on Walmart regarding hazardous conditions outside and along the perimeter of Walmart's premises even though the developer may also be liable and even though the developer contractually agreed to be responsible for repair and maintenance of the area.[10]

As the Court observed in *Stewart*, without the imposition of tort liability on abutting occupiers of land, innocent plaintiffs who suffer injuries will be left without recourse and abutting occupiers would have no incentive to remedy the hazardous condition. 87 *N.J.* at 155, 432 *A.2d* 881. For these reasons, and because the progression of the common law in this area has largely disregarded labels and artificial distinctions regarding the parties' relation-

---

[10] The existence of this duty was presented to the court in a number of ways, including the pretrial cross-motions for summary judgment, Walmart's motion for judgment notwithstanding the verdict, and argument during the trial concerning the content of the jury charge. Ultimately, whether Walmart owed a duty to plaintiff was a legal question to be resolved by the judge, *see Carvalho v. Toll Bros. & Developers*, 143 *N.J.* 565, 572, 675 *A.2d* 209 (1996), that, we conclude, was properly imposed.

ship to the property,[11] we find no principled reason for adopting Walmart's argument that it owed no duty to plaintiff because the injury occurred beyond the boundaries of its commercial condominium unit.

■ We lastly reject Walmart's argument that it had no duty to warn or protect plaintiff because of his status as an employee of an independent contractor. Lying at the heart of Walmart's argument is its contention that plaintiff was injured as a result of "the very hazard created by the doing of the contract work." *Olivo, supra,* 186 *N.J.* at 407, 895 *A.*2d 1143 (quoting *Muhammad v. N.J. Transit,* 176 *N.J.* 185, 198, 821 *A.*2d 1148 (2003)). This quoted phrase can only be properly understood when placed in its proper setting. That is, the *Olivo* Court first recognized that "[a]n occupier of land owes a duty to his invitee 'to use reasonable care to make the premises safe.' " *Olivo, supra,* 186 *N.J.* at 406, 895 *A.*2d 1143 (quoting *Handleman v. Cox,* 39 *N.J.* 95, 111, 187 *A.*2d 708 (1963)). The Court then observed that this duty includes "the obligation of making a reasonable inspection to discover dangerous conditions," which may be "satisfied by warning the independent contractor of the dangerous condition." *Ibid.* It was only after pronouncing these elemental concepts that the Court noted an exception, i.e., the land occupier's " 'duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform.' "

11 In *Olivo v. Owens–Illinois, Inc.,* 186 *N.J.* 394, 406, 895 *A.*2d 1143 (2006), the Court considered the liability of a property owner but expressed the duties that are owed to an invitee by referring, more generally, to "occupier[s] of land." Had the Court recognized the existence of a brightline between owner and tenant or developer and unit owner, as here, in considering the duties owed to an invitee, it likely would not have used the phrase "occupier of land," which would logically encompass tenants and unit owners. We are mindful that recently the Court recognized a brightline between commercial and residential occupiers of land, *Luchejko v. City of Hoboken,* 207 *N.J.* 191, 195, 206–07, 23 *A.*3d 912 (2011), but that distinction is not present here.

*Id.* at 407, 895 *A.*2d 1143 (quoting *Muhammad, supra,* 176 *N.J.* at 199, 821 *A.*2d 1148).

This exception has a far more limited scope than urged by Walmart. For example, the exception would render it unnecessary for an occupier of land to warn a roofer—hired to fix a hole in a roof—about a hole in the roof, as in *Rigatti v. Reddy,* 318 *N.J.Super.* 537, 542–43, 723 *A.*2d 1283 (App.Div.1999). *See also Dawson v. Bunker Hill Plaza Assoc.,* 289 *N.J.Super.* 309, 317–19, 673 *A.*2d 847 (App.Div.) (holding the landowner had no duty to warn an employee of a company hired to install roof trusses of the dangers of collapsing roof trusses), *certif. denied,* 146 *N.J.* 569, 683 *A.*2d 1164 (1996); *Cassano v. Aschoff,* 226 *N.J.Super.* 110, 112–14, 543 *A.*2d 973 (App.Div.) (holding defendant had no duty to warn plaintiff, who was hired to remove a tree, of the dangers of falling branches), *certif. denied,* 113 *N.J.* 371, 550 *A.*2d 476 (1988). But this exception would not cover a circumstance, such as occurred here, where the land occupier fails to warn of a hazardous condition that the independent contractor is not there to repair, but only to traverse in order to reach another location to be addressed by the service the independent contractor has agreed to provide. *See, e.g., Dawson, supra,* 289 *N.J.Super.* at 320, 673 *A.*2d 847 (citing *Black v. Pub. Serv. Elec. & Gas Co.,* 56 *N.J.* 63, 69–70, 265 *A.*2d 129 (1970); *Zentz v. Toop,* 92 *N.J.Super.* 105, 108, 222 *A.*2d 290 (App.Div.1966), *aff'd,* 50 *N.J.* 250, 234 *A.*2d 96 (1967)). Moreover, this exception "only applies ... when 'the landowner does not retain control over the means and methods of the execution of the project.' " *Olivo, supra,* 186 *N.J.* at 407, 895 *A.*2d 1143 (quoting *Muhammad, supra,* 176 *N.J.* at 198, 821 *A.*2d 1148). Although there is no evidence that Walmart directed plaintiff in the method of catching rodents, Walmart did control plaintiff's route to the locations to be treated. As a result, the trial judge did not err in refusing to instruct the jury about this exception.

Affirmed.