**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5163-17T3

EDNA ALBERT and
SCHMUEL ALBERT,
her husband,

      Plaintiffs-Appellants,

v.

PATHMARK STORES, INC., and
KLINGENSMITH ASSOCIATES,
LLC,

      Defendants-Respondents,

and

MICHAEL C. DISTEFANO,
M.D., CHARLES F. ASTA, M.D.,
THE VALLEY HOSPITAL, and
MALWINDER SINGH, M.D.,

      Defendants.

_____

      Submitted June 6, 2019 – Decided July 10, 2019

      Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8938-12.

Joseph H. Neiman, attorney for appellants.

Respondents have not filed briefs.

PER CURIAM

In this personal injury matter, Edna Albert and her husband, Schmuel Albert, appeal from a June 14, 2018 judgment, focusing their appeal on a May 22, 2015 order granting summary judgment for defendants Pathmark Stores, Inc. (Pathmark) and Klingensmith Associates, LLC (Klingensmith). We affirm.

On November 27, 2010, Plaintiff Edna Albert suffered personal injuries when she slipped and fell on a sidewalk outside a Pathmark grocery store. Pathmark leased the premises from Klingensmith. Plaintiff and her husband sued Pathmark and Klingensmith for negligence, as well as several doctors and a hospital for medical malpractice.[1]

Klingensmith is a trust whose only asset is the subject property. In 1988, Pathmark signed a lease with United Trust Fund Limited Partnership,

---

[1] Plaintiff's claims against certain doctors and the hospital were voluntarily dismissed. A jury returned a no cause verdict in favor of Michael C. DiStefano, M.D. On June 14, 2018, the trial court entered a judgment dismissing plaintiff's complaint with prejudice. The medical malpractice claim is not before us on appeal.

A-5163-17T3

Klingensmith's predecessor in interest, and has operated its store on the property ever since. The 1988 lease agreement is still operative and is considered a "triple-net lease." Section 2.1 of the lease agreement states:

> Lessee acknowledges that it has received the [p]remises in good order and repair. Lessee, at its own expense, will maintain all parts of the [p]remises in good repair and good condition . . . and will take all action and will make all structural . . . changes and repairs which may be required to keep all parts of the [p]remises in good repair and condition (including, but not limited to . . . all paving [and] sidewalks . . .) in as good a condition as they existed at the beginning of the [i]nterim [t]erm . . . . [Pathmark] waives the right to require [Klingensmith] to maintain, repair or rebuild all or any part of the [p]remises . . . .

Plaintiff alleged she tripped over a gap in the sidewalk created by the deterioration of an expansion joint between two concrete slabs. Plaintiff commissioned two expert reports. The first expert, an architect, visited the Pathmark store on May 17, 2014, and measured the gap between the two concrete slabs where plaintiff tripped. He opined the expansion joint gap was too wide, the expansion joint filler had deteriorated and the gap violated industry norms thereby creating an uneven walkway. Although he could not tell when the expansion joint filler began to decay, he concluded the expansion joint was improperly constructed. Plaintiff's second expert opined the defect was either present at the time of construction or developed over time. On May 8, 2015,

A-5163-17T3

both Pathmark[2] and Klingensmith moved for summary judgment. Klingensmith argued Pathmark had a duty to maintain the sidewalk under the triple-net lease. In response, plaintiff argued (1) the duty to maintain a premises is a non-delegable duty and (2) even if it is, section 2.1 of the lease agreement does not apply because the defect in the sidewalk arose before the lease was entered into. The judge disagreed and entered summary judgment in defendant's favor. This appeal followed.

On appeal, plaintiff argues the trial court erred granting summary judgment to Klingensmith, the lease provided for Klingensmith's liability and commercial landowners are obligated to provide a safe premises. Plaintiff also argued Klingensmith could not delegate the obligation to maintain a safe premises. We disagree.

We "review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union

---

[2] Pathmark is a subsidiary of The Great Atlantic & Pacific Tea Company (A&P). A&P filed for bankruptcy on December 12, 2010. Their reorganization plan was approved by the bankruptcy court, and they emerged from bankruptcy on March 13, 2012. All claims against A&P that arose prior to March 13, 2012, were discharged and all claimants were enjoined from pursuing those claims. Before the trial court, both parties conceded plaintiff could not sue Pathmark. Therefore, the trial judge granted summary judgment for Pathmark and ordered Pathmark remain in the case in name only to allocate liability at trial.

A-5163-17T3

Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  A motion for summary judgment should be granted, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  We "view the evidence in the light most favorable to the non-moving party[.]"  Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012).  "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)).  "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion[.]"  Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

Plaintiff argues Nielsen v. Wal-Mart Store No. 2171, 429 N.J. Super. 251 (App. Div. 2013), and Meier v. D'Ambose, 419 N.J. Super. 439 (App. Div. 2011), support the proposition that a triple-net lease cannot absolve a landowner from their non-delegable duty to maintain a premises open to the public, and Geringer v. Hartz Mountain Development, 388 N.J. Super. 392 (App. Div.

A-5163-17T3

2006), supports the proposition landowners remain liable for injuries caused by defects to property that existed at the inception of the lease agreement. These cases are distinguishable.

Traditionally, a landlord is not responsible for the maintenance of a leased premises; rather, the tenant assumes that duty as a condition of possession. See, e.g., Michaels v. Brookchester, Inc., 26 N.J. 379, 382 (1958). We have recognized two "exceptions to the general rule: (1) a landlord is responsible to use reasonable care with regard to portions of the leased premises which are 'not demised and remain in the landlord's control[,]'" and "(2) a landlord's covenant to repair gives rise to a duty to the tenant[.]" McBride v. Port Auth. of N.Y. & N.J., 295 N.J. Super. 521, 525 (App. Div. 1996) (first alteration in original) (quoting Michaels, 26 N.J. at 383-85). The lease in McBride also included a duty-shifting provision, and we said that because neither exception was met, the lessee, not lessor, was duty-bound to maintain the premises. Id. at 526-27.

We discussed the exceptions to the general rule further in Meier where we noted, regardless of the lease terms, a landlord retained a non-delegable duty to maintain fixtures over which the landlord had exclusive control and access. 419 N.J. Super. at 449. In Meier, it was fair to impose liability on a landlord for the failure to maintain a furnace system, because the landlord had the incentive and

was in the best position to maintain permanent and potentially dangerous fixtures in the leased premises. Id. at 450. To determine whether a duty-shifting provision in a lease should be ignored, courts, when necessary, should apply the Hopkins factors and focus on which party had the opportunity and ability to exercise care. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993).

Here, Pathmark, not Klingensmith, was in the best position to remedy the defective sidewalk, and, as a result, section 2.1 controls the allocation of liability. Plaintiff's reliance on Nielsen is misplaced. The plaintiff in Nielsen slipped and fell outside a Walmart store. 429 N.J. Super. at 254. Walmart purchased its store from a developer pursuant to a master deed. Id. at 254-55. The developer retained the duty to "repair, replace and maintain" the common areas around the store. Id. at 255. Thus, Walmart argued it had no duty to maintain the premises outside its store. We disagreed, because Walmart was in the best position to mitigate the risk of harm on and around its store. Id. at 263. It was foreseeable that invitees would use the common areas outside the store in order to patronize the Walmart and potentially suffer injuries caused by defects just outside the store's perimeter. Ibid.

Nielsen is different from this case. Section 2.1 of the lease specifically required Pathmark to maintain the concrete and sidewalks on the leased

A-5163-17T3

premises.  Unlike in Nielsen, the landlord, not the business who invited the patron onto their property, is seeking to avoid liability.

Meier also does not help plaintiff's case.  In a commercial lease, particularly where the lessee is a grocery store conducting business both in and outside of its store, a sidewalk is not the type of fixture that only the landlord could reasonably access and maintain.  Rather, like in Nielsen, Pathmark is properly responsible for maintaining the common area outside their store.

In Geringer, the plaintiff was injured when she tripped and fell on carpeting in commercial office building and sued the tenant and developer.  388 N.J. Super. at 394-95.  The stairway where the plaintiff fell was built by the tenant pursuant to the terms of a lease agreement between the tenant and developer.  Id. at 395.  The lease declared the tenant responsible for constructing the stairway and shifted the duty to maintain the interior of the premises to the tenant.  Id. at 397.  However, per the terms of the lease, the developer retained the authority to review and sign-off on the plans to build the new stairway.  Id. at 402.  As a result, the plaintiff could maintain a claim against the developer for negligently designing the stairway, because the developer was intimately involved with its construction.  Ibid.

Geringer is inapplicable here because in that case there was at least a genuine dispute of material fact that the developer had constructive notice of the defect. Here, section 2.1 of the lease, by implication, held Klingensmith responsible for all defects arising prior to the inception of the lease. Thus, plaintiff needed to allege a genuine dispute of material fact that the defect existed prior to the existence of the lease agreement and that Klingensmith, or its predecessor in interest, had constructive notice of the defect. However, her proofs fail to do this. At best, plaintiff's expert opines that the defect was present since construction of the sidewalk. But plaintiff failed to show when that took place, let alone that Klingensmith should have known of the defect before the inception of the lease. Moreover, we note the lease states Pathmark acknowledged it took the premises in good order and repair.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5163-17T3