**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4058-19

DEERFIELD DISTRIBUTING,
INC., and PROTECT &
CONTROL, INC.,

      Plaintiffs-Appellants,

v.

JEFFREY D. GRATZ, MARC
GRATZ, and ANIXTER INC.,

      Defendants-Respondents.

_____

Submitted April 20, 2021 – Decided May 6, 2021

Before Judges Fisher and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000280-18.

Meyner and Landis, LLP, attorneys for appellants (Scott T. McCleary and Catherine Pastrikos Kelly, on the briefs).

Thompson Hine, LLP, attorneys for respondents (Rebecca Brazzano, on the brief).

PER CURIAM

In this appeal, plaintiffs argue the trial judge erred – after a five-day bench trial – in, among other things: determining a restrictive covenant contained in a confidentiality agreement signed by the individual defendants – plaintiffs' former employees – was unenforceable; finding the individual defendants did not violate the confidentiality agreement; and rejecting the claim that the individual defendants and their new employer conspired to breach the agreement. We find no merit in plaintiffs' arguments and affirm.

The evidence adduced at trial revealed plaintiff Deerfield Distributing, Inc. is a wholesale distribution business formed in 1987. Fourteen years later, to "isolate [Deerfield's] security business and to put in place an incentive arrangement for Nick Scarane," who ran Deerfield's day-to-day operations and managed its sales force, plaintiff Protect & Control, Inc. (also known as eDist) was formed to engage in the distribution of security products.

Defendant Marc Gratz had worked with Scarane at another business similar to eDist in the 1990's. Marc left that business in May 2000 and joined eDist because Scarane was there employed. Defendant Jeffrey Gratz, like his brother Marc, had worked in the security distribution business for more than

thirty years when he too left his then employer and began working for eDist in December 2001.

The Gratz brothers did not sign confidentiality or restrictive covenant agreements when first employed by eDist; they were, however, asked to do so in 2011 or else face termination from their employment. In November 2011, both brothers executed agreements containing promises not to "use, disclose or publish any Confidential Information[1] to anyone outside the Company,[2] either during or subsequent to [their] employment[.]" The agreement also contained their promise that "[d]uring and for the two-year period" following the termination of their employment, they would not:

- "directly or indirectly . . . induce or attempt to induce . . . any employee, consultant, referral source or agent of the Company . . . to alter or

---

[1] "Confidential Information" was defined in the agreement as any of plaintiffs' "proprietary information, technical data, trade secrets or know how, including, but not limited to, research, product plans, products services, customer lists and customers of the Company (including but not limited to, customers of the Company on whom [the signator] called or with whom [the signator] became acquainted during the term of [the signator's] employment)." Another provision of the agreement stated that confidential information "does not include any of [those items described immediately above] that have become publicly known and made generally available through no wrongful act of [the signator's] or of others who were under confidentiality obligations as to the item or items involved."

[2] "Company" was defined as "Deerfield Distributing, Inc. t/a eDist, its subsidiaries, affiliates, successors and assigns."

A-4058-19

terminate their employment or other relationship with the Company"; or

- "solicit or conduct business with, any of the Company's clients[3] or referral sources for the purpose of inducing them to do business with any person or entity other than the Company in the Company's Market Area[4] with regard to the purchase of competing services as determined by the Company in its sole discretion."

In May 2017, eDist's national sales manager resigned, and Scarane resigned two months later. Scarane was replaced by someone without experience in the security industry.

A month after Scarane departed, Jeffrey Gratz was approached by a regional manager of defendant Anixter, Inc. – an eDist competitor – about a sales position with Anixter. The discussions expanded, and both brothers expressed an interest in leaving eDist and joining Anixter. Marc Gratz provided Anixter with a copy of the confidentiality agreement, prompting Anixter to make separate and independent offers to both brothers; Anixter also instructed them "not to disclose or otherwise use any of eDist's confidential or proprietary

---

[3] The agreement defines a Company client as "any person or entity that the Company provided services to during the term of [the signator's] employment with the Company or, if longer, during the thirty-six (36) months prior to the date of [the signator's] last day of employment with the Company."

[4] The agreement defines this "Market Area" as North America.

A-4058-19

information" or attempt to recruit or solicit any eDist employees. In addition, the brothers were directed not to solicit the business of customers they dealt with while at eDist, although Anixter noted that "if customers – of their own volition – choose to do business with Anixter, that is, of course, the customers['] prerogative." Anixter's official offers of employment were extended to the Gratz brothers in early December 2017. They both accepted, resigned from eDist, and began working for Anixter on January 15, 2018.

In October 2018, plaintiffs commenced this action, alleging the Gratz brothers breached the confidentiality agreement and the terms of the restrictive covenant, as well as the implied covenant of good faith and fair dealing and their common law duty of loyalty. Plaintiffs alleged the brothers committed fraud and made fraudulent misrepresentations; their complaint also included claims against the Gratz brothers and Anixter together, alleging the misappropriation of trade secrets, unfair competition, and civil conspiracy, and a count against Anixter alone for tortious interference.

At the outset, the judge entered an order to show cause, denying plaintiffs' request for immediate temporary restraints. In January 2019, the judge denied plaintiffs' request for a preliminary injunction, and motions for summary judgment were denied later in the litigation.

A-4058-19

During a bench trial that took place on October 29 and 30, and December 10, 17 and 18, 2019, the judge heard testimony from both sides regarding the claims that: (1) defendants solicited and conducted business in violation of the confidentiality agreements; (2) defendants made use of eDist's confidential information; (3) the Gratz brothers attempted to induce eDist employees to resign; (4) the Gratz brothers encouraged eDist to renew a lease for a business location knowing they would soon depart; and (5) Anixter sanctioned and assisted the Gratz brothers activities in soliciting business and using eDist's confidential information. The trial judge determined that the confidentiality agreement was "overly broad" because it was not limited to customers with whom the Gratz brothers did business nor to the territory they covered. The judge also found that eDist impermissibly sought to insulate any person or entity with whom it had provided services during the Gratz brothers' employment, and beyond, throughout all North America. For these and other reasons, the judge found the confidentiality agreement and its restrictive covenant to be unenforceable. Moreover, the judge determined there was no solicitation of business inconsistent with the confidentiality agreement. Instead, as the judge noted in his opinion, defendants' approach was epitomized by the step Jeffrey Gratz took in updating his Facebook page to publicly advise of his change of

A-4058-19

employment that allowed customers to reach out to him rather than the other way around. The judge referred to the "telling" example of one customer who replied to Jeffrey Gratz, "Honestly, I'll follow you . . . . I have no allegiance to eDist, my allegiance is with you." The judge provided thorough findings in his written opinion, rejecting plaintiffs' other alleged causes of action. Judgment was entered in defendants' favor.

Plaintiffs appeal, arguing:

> I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ENFORCE THE AGREEMENT'S RESTRICTIVE COVENANTS.
>
> > A. Standard of Review
> >
> > B. The Agreement is Enforceable as Written.
> >
> > C. Plaintiffs Proved by a Preponderance of the Evidence that [the Gratz brothers] Violated the Agreement.[5]
>
> II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS.
>
> III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE AGAINST ANIXTER.

---

[5] We have eliminated for brevity's sake the subsections of sections B and C of plaintiffs' Point I and those subsumed in Point VIII.

IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' CLAIMS FOR CONSPIRACY AGAINST DEFENDANTS FOR STEALING PLAINTIFFS' CUSTOMERS.

V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' CLAIMS FOR FRAUD AND FRAUDULENT MISREPRESENTATION AGAINST [THE GRATZ BROTHERS] BASED ON THE PURPORTED ABSENCE OF A MATERIAL MISREPRESENTATION.

VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' CLAIM AGAINST [THE GRATZ BROTHERS] FOR BREACHING THEIR DUTY OF LOYALTY.

VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' CLAIM AGAINST DEFENDANTS FOR UNFAIR COMPETITION.

VIII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT PLAINTIFFS FAILED TO PROVE DAMAGES [AND THE TRIAL COURT] SHOULD [HAVE] REJECT[ED] DEFENDANTS' EXPERT REBUTTAL.

IX. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED PLAINTIFFS' MOTION TO AMEND ITS COMPLAINT.

We find insufficient merit in these arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

We add only, with regard to plaintiffs' first eight points, that the judge's findings of fact deserve our deference because they are grounded in the evidence and testimony the judge found credible and persuasive, Rova Farms Resort, Inc. v. Inv. Ins. Co., 65 N.J. 474, 483-84 (1974), and that the conclusions the judge drew from those findings are well reasoned and based on established legal and equitable principles, Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). We, therefore, affirm substantially for the reasons set forth in Judge James J. DeLuca's comprehensive and well-reasoned written decision.

In their ninth point, plaintiffs contend that the judge abused his discretion in denying their August 2019 request to amend the complaint to add a claim that defendants "negligently caus[ed] economic loss." Judge DeLuca correctly recognized this was merely a new theory; his "letter order" stated that "[p]laintiffs readily concede that the proposed amendment is not based upon any new evidence or discovery." He noted the expiration of the time to amend and the time for fact depositions, and that the deadline for submitting expert reports was days away. Moreover, the judge determined that plaintiffs had not provided a "legitimate reason why they delayed in raising this claim" and that to allow the amendment would cause a delay in an "already contentious proceeding." Judge DeLuca later denied plaintiffs' motion for reconsideration, further

A-4058-19

amplifying on the basis for his earlier denial. We find no abuse of discretion. As the judge correctly recognized, the amendment "would have a prejudicial effect on the [d]efendants in terms of delay, expense[,] and their ability to prepare and meet such a claim." We find no abuse of discretion in the judge's disposition of plaintiffs' last-minute request for an amendment. See Du-Wel Prods., Inc. v. U.S. Fire Ins. Co., 236 N.J. Super. 349, 364 (App. Div. 1989) (upholding the exercise of a judge's discretion to refuse a late amendment "at a point at which the rights of other parties to a modicum of expedition will be prejudicially affected"); see also Nielsen v. Wal-Mart Store No. 2171, 429 N.J. Super. 251, 256 (App. Div. 2013); Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 484 (App. Div. 2012).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4058-19