**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2965-22

JOSEPH CHIARAVALLOTI and
KIMBERLY CHIARAVALLOTI,
his wife,

      Plaintiffs-Appellants,

v.

FREEDOM MORTGAGE
CORPORATION, G&M
INVESTMENTS LLC %SUITE3,
G&M INV SUITE 3, G AND M
INVESTMENTS LLC, and/or
G & M INVESTMENTS LLC,
G & M INVESTMENTS II LLC,
and SRMG ENTERPRISES, LLC,

      Defendants-Respondents,

and

ARCHWELL SOLUTIONS LLC,

      Defendant.

_____

Argued May 1, 2024 – Decided March 3, 2025

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0814-21.

Richard T. Astorino argued the cause for appellants (Kotlar, Hernandez & Cohen, LLC, attorneys; Richard T. Astorino, of counsel and on the briefs).

Joseph F. Skinner argued the cause for respondent Freedom Mortgage Corporation (Kirmser, Lamastra, Cunningham & Skinner, attorneys; Joseph F. Skinner, of counsel and on the brief; Laura P. Baker, on the brief).

James J. Law argued the cause for respondents G and M Investments, LLC[1] and SRMG Enterprises, LLC (Dengler & Lipski, attorneys; James J. Law, of counsel and on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

While working as a self-employed elevator mechanic, plaintiff Joseph Chiaravalloti[2] was injured when he fell from an allegedly faulty ladder he was required to use to access parts of the elevators he was servicing in a building owned by defendant G&M and leased by defendant Freedom Mortgage

---

[1] In its answer to the complaint, defendant G and M Investments, LLC (G&M) indicated plaintiffs had misidentified defendant in the complaint as "G&M Investments LLC %Suite 3" and "G & M Investments II LLC."

[2] Kimberly Chiaravalloti, who is Joseph Chiaravalloti's wife, is also a plaintiff in this case. For ease of reading, we refer to Joseph Chiaravalloti as "plaintiff."

A-2965-22

Corporation (Freedom). The court granted defendants' summary-judgment motions, finding defendants were not liable because the fall occurred as a result of "an operational hazard obvious and visible" to plaintiff that was part of the work he had been hired to perform. Because the court misapplied a narrow exception to the general rule imposing liability for the failure to provide a reasonably safe work place, we reverse those orders and a subsequent order denying plaintiffs' reconsideration motion.

I.

We draw these facts from the summary-judgment record, "view[ing] the evidence in the light most favorable to [plaintiffs,] the non-moving part[ies]." Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024) (first alteration in original) (quoting Qian v. Toll Bros., Inc., 223 N.J. 124, 134-35 (2015)).

At the time of the accident, plaintiff worked as an elevator mechanic. He was employed by Advanced Elevator Services, LLC (AES), a company he had created, owned, and operated. In 2012, AES and G&M entered into an "Elevator Maintenance Agreement," in which AES agreed to provide maintenance for two hydraulic passenger elevators located in a building owned by G&M and leased by Freedom. In the Agreement, AES agreed to provide "periodic examination,

3

lubrication and adjustment" of certain parts of the elevators and to "make necessary adjustment and repairs" to certain parts "when conditions warrant." Paragraph 3 of the Agreement contained a list of items not covered by the Agreement and for which AES was not responsible, including light fixtures and lamps. Before the fall, plaintiff serviced the elevators in the building on a monthly basis.

On March 21, 2019, plaintiff entered the elevator shaft in the building to perform a maintenance task in the elevator pit area. The elevator pit was located underneath the elevators below the first floor. To access the elevator pit, plaintiff had to use an "access ladder" to descend to the bottom of the pit. According to plaintiff, on the day of the accident while he was "[u]sing the access ladder provided by the building, an obstruction in the ladder rung caused the footing on the access ladder to be inadequate which caused [him] to lose [his] own footing and slip off the access ladder." Plaintiff "held onto the ladder with [his] right hand and arm only, for as long as [he] could. Then [he] dropped approximately four feet to the concrete floor below and landed on his feet."

Plaintiff identified the hazardous condition as "an obstruction and a protrusion including a light fixture. It was also a construction defect." Plaintiff described the ladder and light fixture as follows:

> Approximately two feet below the top of the ladder is a mounting point that they mount this metal ladder to the building beam . . . . Below that, they had mounted . . . prior to our company being there. . . . a light fixture that was mounted in the rung of the ladder under the beam, and that's what caused me not to have proper footing on the ladder.

Plaintiff "had prior problems with the light fixture being in the way." Plaintiff described the "problems" he had previously experienced descending into the pit as "[n]ot having proper footing." According to plaintiff, "[w]hen you're on a ladder, you should be able to place your foot and the ladder rung in the arch of your foot or just before your heel so you're secure when you move to the next rung. That light fixture prohibited that." Plaintiff testified "[t]he light fixture doesn't have to do with the elevator. It has to do with the building side responsibilities . . . that was a building issue" and that "[a]nything electrical that has to do with lighting or . . . other unrelated elevator devices, which a light is not an elevator device, . . . is building responsibility."

Before the fall, plaintiff had reported the problem to "Ryan" and "Steve." Ryan Kerner was the Freedom employee who normally met with plaintiff on his visits and signed plaintiff's paperwork. He and Steve Delvisio were part of the Freedom in-house maintenance crew. Plaintiff also had reported it "on the paperwork that's signed after every visit." The record contains, for example, an

5

AES service ticket dated April 28, 2018, with a handwritten note: "Notified customer of oil & ladder issue." Freedom was identified as the "customer." Kerner signed that service ticket as the customer.

The record also contains an AES service ticket dated March 21, 2019, the day of the fall. That ticket indicates plaintiff was at the building to perform routine service and inspections. A handwritten note on the ticket states: "pit ladder issues 1 & 2 cars," "unknown" materials were needed to address that issue, and "notified customer Ryan, Norman." Norman Zeller was the senior vice president of facilities and corporate real estate for Freedom and was responsible for maintenance within the building.

On March 19, 2021, plaintiffs filed a complaint against G&M, Freedom, Archwell Solutions, LLC (Archwell), and SRMG Enterprises, LLC (SRMG).[3] They alleged plaintiff, while lawfully present at the building, had "sustained serious and permanent injuries when he was caused to slip and fall upon a dangerous condition, . . . as a result of the negligence, carelessness and/or recklessness of" defendants. G&M and SRMG and Freedom filed answers in

---

[3] Archwell's and SRMG's roles are not clear from the summary-judgment record. Plaintiffs assert in their merits brief that SRMG was the "property manager" of the building; defendants do not dispute that assertion in their responsive briefs.

response to the complaint. The court granted Archwell's unopposed summary-judgment motion in a September 10, 2021 order. Plaintiffs did not appeal from that order.

Plaintiff's expert witness, William Seymour, submitted a report in which he opined:

> The ladder rung from which [plaintiff] slipped was encumbered by the presence of an [I]-beam, light fixture, and electrical box mounted to it. These prevented him from being able to gain a proper and safe toe hold on the ladder rung as they were too close to the ladder rung and interfered with the placement of his foot on that rung.

Seymour also found, among other things, that the proximity of the electrical box, light fixture, and I-beam were violations of the American Society of Mechanical Engineers A 17.1 Safety Code for Elevators. According to Seymour, pit ladders "are considered part structure of a building and are typically not part of an elevator service contract." Seymour concluded "the electrical box and light fixture could have been re-located without significant issue" and "[t]he overall problem could have been resolved by installation of a retractable type elevator pit ladder."

Defendants moved for summary judgment. After hearing argument, the court on March 16, 2023, placed a decision on the record and issued orders

7

granting defendants' motions "on the basis of the fact that this was an operational hazard obvious and visible to the invitee under ordinary circumstances, which was part of or incidental to the very work [plaintiff was] hired to perform."  The court subsequently denied plaintiff's reconsideration motion in a May 12, 2023 order.

Appealing from the summary-judgment and reconsideration orders, plaintiffs argue they have a right to present their case to a jury because they established a prima facie case of negligence and plaintiff was an independent contractor who had no role in creating and was not working on remedying the hazardous condition at issue, over which defendants had exclusive control.

II.

We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "To decide whether a genuine issue of material fact

8

exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). A court should grant summary judgment "[o]nly 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) (internal quotation marks omitted).

We do not defer to a trial court's legal analysis. Beroski v. Honda Motor Co., 480 N.J. Super. 379, 387 (App. Div. 2025). "The existence and scope of a duty is a legal question for the court. . . . We review a trial court's determination of that question de novo." Buddy v. Knapp, 469 N.J. Super. 168, 188 (App. Div. 2021); see also Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997) (whether a defendant owes a duty and the scope of the duty are questions of law for the court to decide).

Generally, "[i]n order to prove a claim of negligence, a plaintiff must demonstrate: '(1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury.'" Underhill v. Borough of Caldwell, 463 N.J. Super. 548, 554 (App. Div. 2020) (quoting Townsend v. Pierre, 221 N.J.

9

36, 51 (2015)).  "A plaintiff bears the burden of proving negligence, . . . and must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries . . . ."  Ibid. (citations omitted).

"Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy."  Holm v. Purdy, 252 N.J. 384, 402 (2022) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).  To determine whether an actionable duty exists, a court weighs "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  Hopkins, 132 N.J. at 439; see Coleman v. Martinez, 247 N.J. 319, 352-54 (2021) (applying the Hopkins factors).  "Once the ability to foresee harm to a particular individual has been established, . . . considerations of fairness and policy govern whether the imposition of a duty is warranted."  Olivo v. Owens-Ill., Inc., 186 N.J. 394, 403 (2006).

A landowner or "[a]n occupier of land owes a duty to his invitee to use reasonable care to make the premises safe."  Nielsen v. Wal-Mart Store #2171, 429 N.J. Super. 251, 264 (App. Div. 2013) (quoting Olivo, 186 N.J. at 406) (internal quotation marks omitted).  That the injured person was the employee

of an independent contractor does not relieve the land occupier or owner of its obligation to make reasonable efforts to make its premises safe.  See ibid. (rejecting the defendant's argument "it had no duty to warn or protect plaintiff because of his status as an employee of an independent contractor").  "[W]here the occupier of land[] engages an independent contractor to do work upon his premises, an employee of the contractor, while executing the work, . . . is an invitee." Olivo, 186 N.J. at 406 (quoting Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 219 (1954)).  A land occupier has a duty to an employee of an independent contractor "to provide a reasonably safe work place." Ibid. (quoting Muhammad v. N.J. Transit, 176 N.J. 185, 199 (2003)).

A land occupier, however, "is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work." Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986); see also Nielsen, 429 N.J. Super. at 264 (quoting Olivo, 186 N.J. at 407) (internal quotation marks omitted) (acknowledging a "land occupier's 'duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform'").  The court granted defendants' summary-

judgment motions on the basis of that exception to the general rule imposing liability for the failure to provide a reasonably safe work place.

But that "exception has a far more limited scope . . . ." Nielsen, 429 N.J. Super. at 265. As we explained in Nielsen, the exception renders "it unnecessary for an occupier of land to warn a roofer -- hired to fix a hole in a roof -- about a hole in the roof," ibid. (citing Rigatti v. Reddy, 318 N.J. Super. 537, 542-43 (App. Div. 1999)), or a roof-truss installer about "the dangers of collapsing roof trusses," ibid. (citing Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 317-19 (App. Div. 1996)), or a tree-removal contractor about "the dangers of falling branches," ibid. (citing Cassano v. Aschoff, 226 N.J. Super. 110, 112-14 (App. Div. 1988)).

If this case was about an elevator mechanic injured as a result of the collapse of an elevator, then the court might have had reason to apply the exception. But that's not what this case is about. Here, plaintiff alleges he was injured not because of something he was hired to repair and maintain – the elevator – but because of a hazardous condition – the ladder, light fixture, and electrical box mounted to it – he was "not there to repair, but only to traverse in order to reach another location to be addressed by the service [he] ha[d] agreed to provide." Ibid.

"Moreover, this exception 'only applies . . . when the landowner does not retain control over the means and methods of the execution of the project.'" Ibid. (quoting Olivo, 186 N.J. at 407) (internal quotation marks omitted). Defendants may not have told plaintiff how to fix and maintain the elevators, but they "did control plaintiff's route to the locations to be treated." Ibid. Defendants concede plaintiff had to use the allegedly faulty ladder to reach the elevator pit to perform his maintenance duties.

"[P]remises liability law can, and should, develop in a manner consistent with its 'fundamental purpose . . . to deter conduct that creates an unreasonable risk of injury to others.'" Olivo, 186 N.J. at 402 (quoting Kuzmicz v. Ivy Hill Apartments, Inc., 147 N.J. 510, 534-35 (1997) (Stein, J., dissenting)). Viewing the evidence in the light most favorable to plaintiffs, a reasonable factfinder could conclude defendants required plaintiff to "traverse" a dangerous ladder to access an area he had contracted to maintain. Nielsen, 429 N.J. Super. at 265. Use of a faulty ladder is not inherently part of an elevator mechanic's job. To the contrary, he shouldn't have had to use a faulty ladder to do his job. Applying the general principles of tort liability to those facts, the risk of injury to someone like plaintiff is foreseeable and the imposition of a duty under these

circumstances is consistent with the "abiding sense of basic fairness" that is the cornerstone of our tort system. <u>Hopkins</u>, 132 N.J. at 439.

In sum, the court erred in applying the limited exception to the general rule imposing liability for failing to provide a safe work place and, consequently, erred in granting defendants' summary-judgment motions and denying plaintiff's reconsideration motion. Accordingly, we reverse the March 16, 2023 summary-judgment orders and the May 12, 2023 reconsideration order.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-2965-22