NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3027
_____

Michael Krough,
                    Appellant

v.

Calpine; Calpine Corporation; Calpine New Jersey Generation, LLC; Calpine Operating
Services Company, Inc.; XYZ Corporation; ABC Partnership; John Doe; Jane Doe

Calpine Corporation; Calpine New Jersey Generation, LLC; and Calpine Operating
Services Company, Inc.

v.

Brandenburg Industrial Service Company
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-18-cv-15733)
District Judge:  Honorable Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
September 23, 2021

Before:  JORDAN, PORTER, and RENDELL, *Circuit Judges*

(Filed: September 24, 2021)
_____

_____

JORDAN, *Circuit Judge*.

Michael Krough was injured while working at a powerplant owned and operated by Calpine Corporation and its subsidiaries. He was employed by Brandenburg Industrial Service Company, which Calpine had hired to perform demolition and related work at the powerplant. Krough sued Calpine, claiming that Calpine was negligent in failing to provide adequate lighting in the building in which he suffered his injuries. The District Court granted Calpine's motion for summary judgment, holding that Calpine did not owe a legal duty to Krough. We will affirm.

## I.     BACKGROUND

Calpine was the owner of a powerplant called Deepwater Energy Center in Pennsville, New Jersey. In May 2016, Calpine hired Brandenburg to perform demolition and related work at Deepwater. To perform the work, Brandenburg hired laborers, including Krough.

On November 7, 2016, Krough was assigned by Brandenburg to unspool and remove copper wire in the basement of a building at Deepwater. Krough was working with James Freeman, also employed by Brandenburg. Freeman operated a skid steer that pulled and maneuvered the copper wire out of the basement, while Krough unspooled the wire and ensured that it did not get caught on obstructions. The wire they were handling

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

indeed got caught on a pillar. Krough then abandoned Freeman's line of sight to untangle the wire. As Krough attempted to untangle the wire while the skid steer was still moving, his hand became trapped between the wire and that obstruction. Freeman did not notice, and he continued to drive the skid steer away from the pillar. The resulting pressure injured Krough's hand and shoulder.

Krough sued Calpine for negligence and separately filed a worker's compensation claim against Brandenburg. In his lawsuit, he blamed Calpine for not addressing the low and spotty lighting in the basement at the time of his injury. Calpine then filed a third-party complaint against Brandenburg, asserting claims for indemnification, insurance coverage, and breach of contract. After discovery, Calpine moved for summary judgment, which the District Court granted.[1] This appeal followed.

## II. DISCUSSION[2]

Krough argues that the District Court erred in granting summary judgment to Calpine on his negligence claim. But Krough fails to establish the first element of that claim – that Calpine owed him a legal duty.

---

[1] In granting Calpine's summary judgment motion on Krough's claims, the District Court did not adjudicate Calpine's third-party claims against Brandenburg. The Court did, however, certify its judgment as final and appealable under Federal Rule of Civil Procedure 54(b).

[2] The District Court had jurisdiction under 28 U.S.C. § 1332. In light of its certification of the judgment as final and appealable under Rule 54(b), we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012). Our review of a district court's grant of summary judgment is de novo. *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 358 (3d Cir. 2021). In evaluating Calpine's motion for summary judgment, we determine whether there are any genuine disputes of material fact, and if not, we view the evidence in the light most favorable to

Under New Jersey law, the fundamental elements of a negligence claim are (1) a duty of care, (2) a breach of that duty, (3) injury proximately caused by the breach, and (4) damages. *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014). "[W]hether a defendant owes a legal duty to another" is "generally [a] question[] of law for the court to decide." *Id.* In the context of "a landowner's duty to an employee of an independent contractor[,]" the landowner generally owes "a duty to provide a reasonably safe work place." *Olivo v. Owens-Ill., Inc.*, 895 A.2d 1143, 1150 (N.J. 2006) (quoting *Muhammad v. N.J. Transit*, 821 A.2d 1148, 1156 (N.J. 2003)). That duty does not exist, however, with respect to "known hazards which are part of or incidental to the very work the contractor was hired to perform[,]" *Muhammad*, 821 A.2d at 1156 (quoting *Wolczak v. Nat'l Elec. Prods. Corp.*, 168 A.2d 412, 417 (N.J. Super. Ct. App. Div. 1961)), as long as "the landowner does not retain control over the means and methods of the execution of the project." *Id.* That known-and-incidental-hazards exception to landowner liability exists because "[t]he landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly." *Olivo*, 895 A.2d at 1151 (alteration in original) (quoting *Muhammad*, 821 A.2d at 1156).

Krough does not dispute that his injury occurred while he was unspooling copper wire, a task that was part of and incidental to the demolition work that Calpine hired

Krough and decide whether Calpine is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

4

Krough's employer, Brandenberg, to perform.  Nor does Krough dispute that the wire-unspooling task involved known hazards.  *Cf. Olivo*, 895 A.2d at 1151 (remanding for development of issue whether asbestos was known risk).

Thus, the crux of the parties' dispute is whether Calpine retained control over the means and methods of the execution of the wire-unspooling task during which Krough suffered his injury.  *See Sanna v. Nat'l Sponge Co.*, 506 A.2d 1258, 1262 (N.J. Super. Ct. App. Div. 1986) (noting that prior "decisions stressed the degree to which the landowner participated in, actively interfered with, or exercised control over the manner and method of the work being performed at the time of the injury").  We conclude that Calpine did not.

The undisputed facts demonstrate that Brandenburg, not Calpine, controlled the manner in which Krough performed the wire unspooling.  Krough does not dispute that the Brandenburg foreman assigned him to his various jobs at the site, including the wire-unspooling task; that Brandenburg told Krough how to do his job  and provided employees training on appropriate safety precautions; that the skid steer involved in Krough's injury was owned by Brandenburg and operated by a Brandenburg employee; and that Brandenburg decided what safety gear and communications methods and procedures were to be used.  Indeed, it is also undisputed that Brandenburg installed the temporary lighting about which Krough complains.  *See Muhammad*, 821 A.2d at 1156-57 (reasoning that the landowner had no duty directly to plaintiff who "answered to [his employer, an independent contractor] alone[,]" "took direction from [independent

contractor's] management, [and] received all materials and protective gear used on the project from [independent contractor]").

Conversely, Calpine's role with respect to Krough's work was much more limited. Krough points to a number of undisputed facts that he says indicate Calpine's control: Calpine committed to and did have representatives present at the job site to provide direction and answer Brandenburg's questions regarding the work; Calpine and Brandenburg held weekly coordination meetings where safety was addressed; and a Calpine official agreed that Calpine and Brandenburg shared responsibility for site safety. But those facts reflect a "general supervisory power over the result to be accomplished rather than the means of that accomplishment." *Id.* at 1155 (quoting *Mavrikidis v. Petullo*, 707 A.2d 977, 986 (N.J. 1998)). It is also undisputed that Calpine had authority to and did, on one occasion, stop and address unsafe practices in Brandenburg's work;[3] that Calpine and Brandenburg coordinated so that Calpine's other work at Deepwater would not interfere with Brandenburg's demolition work; that Calpine answered Brandenburg's questions about pipe removal so as to avoid flooding; and that Calpine controlled access to the job site via a security gate. But, again, those facts do not support a conclusion that Calpine participated in or exercised control over the manner in which the wire-unspooling work was done. *See Sanna*, 506 A.2d at 1262. Accordingly, we

---

[3] On that one occasion, Calpine's operations and maintenance manager noticed that a Brandenburg employee was physically lifting a heavy deck plate from trenches at the worksite. He stopped the employee and brought it to the attention of Brandenburg's safety coordinator for correction.

6

conclude that Calpine did not owe a legal duty to Krough under New Jersey's precedents governing landowners and their independent contractors' employees.[4]

Krough's other argument on appeal – that general negligence principles impose a duty on Calpine as an alternative to the specific landowner-contractor precedents noted above – has been forfeited. Krough concedes that he did not make such an argument in the District Court. Despite that, he says that "exceptional circumstances" warrant our consideration of the argument. (Opening Br. at 44-48.) We disagree. Whether to impose a legal duty is ultimately a question of law but it involves a fact-specific inquiry better suited for the District Court, as it may require the development of a factual record and the

---

[4] The District Court granted summary judgment on the basis that Calpine was not vicariously liable for Brandenburg's conduct. As part of that analysis, it rejected, as we do, that Calpine retained control over the manner of Brandenburg's work, a basis that appears to allow liability under either direct or vicarious theories. *Compare Olivo v. Owens-Ill., Inc.*, 895 A.2d 1143, 1150-51 (N.J. 2006) (considering direct liability if landowner retains control over "means and methods" of project (quoting *Muhammad v. N.J. Transit*, 821 A.2d 1148, 1156 (N.J. 2003))), *with Majestic Realty Assocs., Inc. v. Toti Contracting Co.*, 153 A.2d 321, 324 (N.J. 1959) (considering vicarious liability if landowner retains control over "manner and means" of project). The District Court also rejected the two other recognized bases for imposing vicarious liability on a landowner in this situation: that it hired an incompetent contractor, and that the contracted work was inherently dangerous. *See Muhammad v. N.J. Transit*, 821 A.2d 1148, 1155 (N.J. 2003) (reviewing three bases for imposing vicarious liability on employer for torts of independent contractor). But Krough makes clear that he is pursuing only a theory of direct liability against Calpine, and he has waived any argument that Calpine hired an incompetent contractor or that the contracted work was inherently dangerous. We therefore do not consider those two issues, and we may affirm on any grounds supported by the record, "even if the court did not rely on those grounds." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Further, even if Calpine owed Krough a legal duty, there is no evidence inadequate lighting played a causal role in Krough's injury. Krough admits that he was not in the line of sight of Freeman at the time of the accident.

briefing of factors such as the foreseeability and nature of the injury, the relationship of the parties, the opportunity to rectify hazards, and general notions of fairness under particular circumstances. *Alloway v. Bradlees, Inc.*, 723 A.2d 960, 964-65 (N.J. 1999). Further, while we do not doubt the seriousness of Krough's injuries, his receipt of worker's compensation from Brandenburg convinces us that a forfeiture here will not result in a miscarriage of justice. *See Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 147 (3d Cir. 2017) (citing "miscarriage of justice" as an exceptional circumstance).[5] Nor does Krough's argument present the type of broadly significant issue that the public interest demands be considered. *Cf. Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416-17 (3d Cir. 2011) (considering forfeited issue relevant to constitutionality of laws of 38 states under dormant Commerce Clause).

## III.    CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court.

---

[5] We note that under state law, an employee accepting worker's compensation "foregoes his right to sue his employer for negligence." *Dudley v. Victor Lynn Lines, Inc.*, 161 A.2d 479, 484 (N.J. 1960); N.J. Stat. Ann. § 34:15-8.